## LOESCH v. UNION CASUALTY AND SURETY COMPANY, Appellant.

### Division One, July 2, 1903.

1. **Accident Insurance: PROOF OF ACCIDENT: QUESTION OF FACT.** While the insured was untying a bull the animal tossed his head around, and a man standing by, seeing the motion, asked insured, "Did he catch you?" to which he replied, "Yes, but he did not hurt me." Later in the day he began to suffer pain in the abdomen, which increased as time went on. Two days later a physician attended him and found him suffering from inflammation in the abdomen, caused by a bruise. He grew worse and died ten days later. The bruised condition of the intestines revealed by a post-mortem and the inflammation were not otherwise accounted for. *Held*, that the evidence was sufficient to justify the verdict of the jury that the death of the insured resulted from accidental means.

2. ———: **PROOF OF LOSS: WAIVER.** The stamping on the blank for the proof of loss that the company did not, by furnishing the same, waive any right to forfeit the policy for a breach of its condition, and the sending to the beneficiary of a letter to the same effect along with the blank, is positive proof that the company did not waive any of the conditions of forfeiture.

3. ———: **POST-MORTEM WITHOUT NOTICE: FORFEITURE: CONSENT.** The policy provided that "if the post-mortem be held without notifying the company in time to have its medical examiner present, then all claims under this policy shall be forfeited." The evidence showed

that the insured's physician told the beneficiary, the insured's mother, the next day after his death, that he wished to hold a post-mortem, and she made. no objection, and he called in other physicians and held the post-mortem, and that after it was done the mother showed the physician the policy, and discovering this clause he went immediately to the office of the company, notified its officers of what had occurred, and on behalf of the beneficiary offered to hold another post-mortem with their medical adviser if they so desired, but they expressed no such desire, and the mother, after holding the body till the next day, caused it to be buried. The mother testifies that when the physician requested to make the post-mortem she did not know what he meant, and neither assented nor dissented, and did not know what was done until after it was done. *Held*, that the holding of the post-mortem under the circumstances, without notice to the company, did not forfeit the policy. *Held*, also, that if the examination was had without the knowledge or consent of the beneficiary, it would be no defense to a suit on the policy.

4. ———: MORE HAZARDOUS OCCUPATION: AMOUNT OF JUDGMENT. The insured agreed in a policy for $5,000 that "for any injury, fatal or otherwise, received by me while exposed temporarily or otherwise to a hazard classed by the ·company in its manual last issued prior to this date, as more hazardous than that given as. my occupation in this application, the company's liability shall be limited to the amount that the premium paid by me would purchase in such more hazardous class," and the occupation given was "stock dealer, visiting yards, not working or tending in transit," which was classed in the manual as "preferred," the rate for·which was $25 for $5,000, while classed as "extra hazardous" was "stock dealer and tender in transit," the rate ror which was $20 for $1,000. The insured was injured by a bull in unloading a car of cattle which had just been shipped to the stock yards of a city. *Held*, that the true classification was "extra hazardous," and the judgment for $5,000 should be reduced to $1,250.

5. ———: ———: MEANING OF POLICY: DUTY OF COURTS: INSTRUCTIONS. Courts are often required to .discover the meaning of contracts awkwardly expressed, and in this case it is held that the meaning of the hazard clause, though awkwardly expressed, is that the insured agrees that for any injury received by him while exposed to a hazard peculiarly incident to an occupation classed in the manual as more hazardous than that given by him as his occupation, then the company's liability should be limited, etc., and the court in its instructions should not have followed the literal wording of the contract, but should have made them conform to this meaning.

Appeal from St. Louis City· Circuit Court.—*Hon. John A. Talty*, Judge.

REVERSED AND JUDGMENT HERE.

*Percy Werner* for appellant.

(1)   There is no substantial proof that the death of the insured, Frederick Loesch, resulted from accidental means.   A presumption must be based upon fact, and not upon inference or upon another presumption.   Glick v. Railroad, 57 Mo. App. 104; State v. Plass, 58 Mo. App. 152.   (2)   The holding of the post-mortem examination over the body of insured without notifying defendant and giving it opportunity to have its medical adviser present, under the terms of the policy, forfeited all claims thereunder.   Wehle v. U. S. Mut. Acc. Assn., 153 N. Y. 116.   (3)   Insured having procured insurance under the "preferred" class, as a "stock-dealer, not tending in transit," could not recover more than the pro rata insurance if injured whilst temporarily or otherwise engaged in the extra-hazardous occupation of a drover, "tending in transit." Employers' Liability Assn. Co. v. Back, 102 Fed. 229; Aldrich v. Merc. Mut. A. Assn., 148 Mass. 457; Ins. Co. v. Martin, 133 Ind. 379; Cram v. Equitable Acc. Assn., 58 Hun 11; Standard L. & A. Co. v. Taylor, 34 S. W. 781; Mutual Acc. Assn. v. Hilton, 61 Ill. App. 100; R'y Officials Co. v. Bradley, 97 Ill. App. 355; Fidelity & Cas. Co. v. Jones, 62 S. W. 927; National Masonic Acc. Assn. v. Seed, 95 Ill. App. 43; Kern v. Ins. Co., 40 Mo. 19.   (4)   The court erred in giving instruction 1 on behalf of plaintiff.   Instructions unsupported by evidence, of the facts for which they call, are erroneous. Gorham v. Railroad, 113 Mo. 408.   (5)   Instruction 2, given on behalf of plaintiff, was erroneous in requiring that the "act of untying the bull" had to be specified in defendant's manual of occupations, as an occupation more hazardous than that of "stock-dealer, visiting yards, not working, nor tending stock in transit," before a classification other than that insured under could

be looked to in determining the amount of recovery under the policy. Employers' Liability Assn. Co. v. Back, 102 Fed. 229; Mut. Acc. Assn. v. Hilton, 61 Ill. App. 100; Miller v. Ins. Co., 40 N. W. 839. (6) The verdict is excessive, and should in no event exceed $1,250.

*R. M. Nichols* for respondent.

(1) Under the testimony it was proper to submit the question to the jury, and it was a question for the jury as to whether deceased's death was the result of external, violent and accidental means. Bailey v. Interstate Casualty Co., 40 N. Y. Supp. 53, 158 N. Y. 723; Martin v. Equitable Acct. Assn., 68 Sup. Ct. (N. Y.), 61 Hun 467; Freeman v. Mercantile Mut. Acct. Assn., 156 Mass. 351, 30 N. E. 1013; Laessig v. Travelers' Prot. Assn., 169 Mo. 281. (2) Instruction 2, given for plaintiff, submits the question to the jury as to whether. the act of untying the bull was designated or classed by the defendant in its manual as "more hazardous," i. e., was it an act which would properly come under the occupation described in the manual as "stock farmer or dealer, tending in transit, extra hazardous, limit of risk $1,000," or was it an act which would properly come under the occupation described in the manual as "stock-farmer or dealer, not working or supervising, not tending in transit, preferred limit of risk $5,000?" It was the province of the jury to decide the question as to whether or not the act of untying the bull belonged to the one or the other classes of hazard. Union Mut. Acct. Assn. v. Frohart, 134 Ill. 228; Berliner v. Ins. Co., 121 Cal. 462; Stone v. U. S. Cas. Co., 34 N. J. L. 371; Ins. Co. v. Martin, 133 Ind. 376; Hess v. Association, 112 Mich. 196; Fox v. M. F. A. A., 96 Wisc. 396. (3) Furnishing necessary blanks for the proof of loss upon which plaintiff was induced to expend the sum

of $15 in making the proofs; retaining the proofs of loss, made in compliance with the policy, without objection; the efforts, after the proofs were made, to compromise the death claim for $1,200 or $1,500; the offer to submit the body of the deceased to a post-mortem examination for defendant company's special examination, and defendant's reply that they would attend to the matter—these are acts consistent with no other theory than that there was an intention on the part of the defendant to waive any alleged forfeiture on account of holding the post-mortem without notice to it, and was evidence sufficient to go to the jury as to whether or not the defendant had waived the alleged forfeiture. Trippe v. Provident Fund Society, 140 N. Y. 28, 35 N. E. 316; Unthank v. Ins. Co., 4 Biss. (U. S.) 357. (4) The clause "If post-mortem be held without notifying the company in time to have its medical adviser present, then all claims under this policy shall be forfeited," in its natural construction does not preclude the holding of more than one post-mortem, and it does not say at which post-mortem "its medical adviser" shall be present. The clause does not say that he shall be present at all or any post-mortem, but only that it shall not be held "without notifying the company in time," and if present at any, or an opportunity given to be present at any, the object of the clause has been accomplished. In this light, there was not only a substantial, but a strict, compliance with the clause, for the physicians, after discovering the clause in the policy and while acting for the beneficiary, offered to hold another post-mortem for the benefit of the defendant, and such offer saved any forfeiture, if the clause had not been waived. McFarland v. Accident Assn., 124 Mo. 204; Sudduth v. Ins. Co., 106 Fed. 822.

VALLIANT, J.—Suit on an accident policy insuring Frederick Loesch against loss by bodily injury sustained through external, violent and accidental means;

in case of his death by that means the defendant agree-ing to pay the plaintiff, his mother, $5,000. The petition alleged that the insured in his lifetime performed all the conditions of the policy and that while it was in full force on September 26, 1900, he died by reason of bodily injuries received through external, violent and accidental means; that due proof of loss was made to defendant, yet defendant refused to pay, etc.

The following summary of the affirmative matter pleaded in the answer is copied from Mr. Werner's brief:

"The answer admitted the issuance of the policy in suit, but denied the fact of death through accidental means, as stated. It then set up as a special defense the violation of the following condition of the policy, to-wit: 'If the company's representatives are denied the right to make examination of the insured's person or body, in respect to alleged injury or cause of death, or if post-mortem be held without notifying the company in time to have its medical adviser present, then all claims under this policy shall be forfeited, alleging that a post-mortem examination was held over the body of Frederick Loesch, on or about September 27, 1900, without the knowledge of the defendant, and without notifying the defendant in time to have its medical adviser present, and without any notice to it of any intention to hold such post-mortem examination, though the defendant had at the time a medical adviser whom it would have had present had it been advised of the intention of holding such examination.

"For further defense the following condition of the policy was pleaded, viz: '19. I agree that, for any injury, fatal or otherwise, received by me while exposed temporarily or otherwise to a hazard classed by the company in its manual last issued prior to this date, as more hazardous than that given as my occupation in this application, the company's liability shall be limited to the amount that the premium paid by me

would purchase in such more hazardous class. I agree that the classifications in said manual shall be and are a part of this contract.'

"The answer then set out that the deceased, Frederick Loesch, was insured as a 'stock-dealer,' whose occupation and duties were in the policy described as 'visiting yards, not working, or tending in transit,' and that the hazard of such occupation was therein classed as 'preferred,' and that the premium of $25 charged for said policy was the usual and customary charge for such risk; and that part of the consideration of the policy sued on were the representations of the deceased made by the deceased in his written application, relative to the occupation in which he was engaged; and that at the time deceased received the alleged accidental injuries he was engaged in working and tending stock in transit, and that the injuries alleged to have been received were so sustained whilst defendant was untying a bull in a car; and that said occupation was more hazardous than that stated by deceased in his application and in the policy, and that the said occupation of working and tending stock in transit was classified by defendant in its manual issued and in force last prior to the issuance of the said policy as an 'extra hazardous' risk, and that the premium of $25 paid by deceased if he had been described as a 'stock-dealer and tender in transit' to which hazard he was exposed at the time he received the alleged accidental injuries, would have purchased for defendant the sum of $1,250 insurance and no more, and that if liable at all under the policy to plaintiff, defendant was not liable for more than $1,250; the manual in question being filed with the answers as an exhibit thereto."

The reply joined issue on the matters pleaded in the answer.

The policy was filed as an exhibit to the petition and showed that its terms and conditions, and also those

of the application which was a part of it, were correctly
stated in the pleadings.

The testimony on the part of the plaintiff tended to
show as follows:

About 3:20 o'clock in the morning of September
13, 1900, the insured, Frederick Loesch, was in the
stock yards in St. Louis, and called some men who
were the regular e ployees there to assist him in un-
loading a car of cattle that had just arrived. He went
with the men to the switch on which the car was stand-
ing and with their assistance unloaded it. When all
the loose cattle had come out there remained two bulls
in the car which were tied with ropes. Loesch went in
with one of the men and untied the bulls. While he
was doing this one of the bulls tossed his head around
and struck him in the abdomen. One of the men, see-
ing the motion of the bull, asked Loesch if it caught him,
to which he replied, "Yes, but he did not hurt me."
After the cattle were unloaded and delivered where
they were destined, Loesch went home. After he got
home he began to suffer pain in the abdomen which in-
creased as the time went on. On the 15th a physician
attended him and found him suffering with inflamma-
tion of the abdomen, apparently caused by a bruise.
He grew worse and died on September 25th.

On the next day the physician in attendance told
the plaintiff that he desired to hold a post-mortem ex-
amination, to which she assented, or at least made no ob-
jection. He called in some other phyisicians to assist
him and they made a post-mortem examination. After
it was done and the body was sewed up, the physicians
came out of the room, and then the plaintiff handed the
attending physician the policy in suit, and asked him
what she should do in regard to it. He examined it
and discovered the clause declaring that if a post-mor-
tem be held without notice to the company in time to
have its medical adviser present, all claims under the
policy should be forfeited. He went immediately to the

office of the company and notified them of what had occurred and on behalf of the plaintiff offered to hold another post-mortem with their medical adviser if they so desired. But they expressed no such desire and the plaintiff after holding the body until the next day caused it to be buried. Plaintiff testified that when the physician told her that he desired to make a post-mortem examination, she did not know what he meant; that she neither assented nor dissented and did not know what was done until after it was done.

Plaintiff sent an agent, with the policy, to the office of the company to obtain the prescribed blank form on which to make out the proof of loss. Defendant gave this agent the blank requested, first stamping on its face the words, "In furnishing this blank the company reserves all its rights under its policy contract and waives none of the conditions thereof."

On the part of the defendant the testimony tended to show as follows:

The assured Loesch went with one Gerst to Peveley, Missouri; there he assisted Gerst, who was the owner of the cattle referred to, in loading them on the car and left him with the car in charge of it.

The manual of the defendant company classifying the various hazards in force at the date of this policy was in evidence, and it showed that the occupation of the assured as stated in his application—"stock-dealer, not working, not tender in transit"—was classed as "preferred," limit of risk $5,000, fee $25, while "stock-dealer, tender in transit" was classed as extra hazardous, limit of risk $1,000, for which the fee was $20. At that rate $25 would buy $1,250 insurance in that extra hazardous class if the company could go beyond the $1,000 limit.

When the plaintiff's agent asked for the blank form on which to make proof of loss, the agent of the defendant gave it to him, first stamping it as above stated, and at the same time gave him a letter addressed

to the plaintiff in which it was said: "In furnishing you this said blank, we do not thereby waive any of the terms or conditions of said policy or any forfeiture that may have accrued to us thereunder."

At the request of the plaintiff the court gave the following instructions:

"1.   The court instructs the jury that if you believe and find from the evidence in this case that Fred Loesch, the insured, on September 13, 1900, received bodily injuries through external, violent and accidental means, from which injury death resulted on September 26, 1900, and that at the time the said Loesch received such injuries he was a stock-dealer, visiting yards, not working nor tending in transit, pursuing the usual and ordinary vocation of a stock-dealer; and if you further believe and find from the evidence that after the death of the said Loesch, defendant was caused to be notified by plaintiff that a post-mortem examination was to be held over the body of the said Loesch before the same was held, or in time to hold a post-mortem examination over his body on the day after his death and before burial; or if you believe and find from the evidence that after a post-mortem examination had been held over the body of said Loesch, the defendant, with knowledge of all the facts, furnished to plaintiff blanks for proofs of loss, and that these proofs were made and forwarded to the defendant, and that in making such proofs plaintiff incurred expense and trouble, and was required or induced to do so by defendant, then you will find a verdict for the plaintiff in the sum of five thousand dollars, together with interest thereon at the rate of six per cent per annum from the 25th day of February, 1901, to this date.

"2.   If the jury find from the evidence that the said Fred Loesch received the injuries from which death resulted while untying the bull in the car, as heretofore instructed, then the jury are instructed that unless they find from the evidence that the act of un-

tying the bull was designated or classed by defendant in its manual, shown in evidence, as more hazardous than that given as the occupation of said Fred Loesch in his application, viz., stock-dealer, visiting the yards, not working nor tending in transit, you must find a verdict for the plaintiff and assess her damages at the sum of $5,000, as heretofore instructed."

And of its own motion the court gave the following:

"6. The court instructs the jury that if you find from the evidence that a post-mortem examination was held over the body of the deceased, Frederick Loesch, without notice to the defendant in time to have its medical adviser present at the time of such examination, and that no notice was given defendant in time to hold a post-mortem over his body on the day after his death and before burial, then no recovery can be had herein, and your verdict should be for the defendant, unless you find further from the evidence that the defendant waived compliance with such condition as explained in others of these instructions."

At the request of the defendant the court gave an instruction to the effect that if the jury should find for the plaintiff, and if they should further find that Loesch was insured as a stock-dealer, visiting yards, not working nor tending in transit, and that that occupation was classed as preferred and $25 would pay for $5,000 risk, but that when he received the injury he was engaged in working and tending stock in transit, to-wit, untying a bull in the car, and that that occupation was more dangerous than that specified in the application and classed as extra hazardous in the manual, and that $25 would purchase insurance in that class only to the amount of $1,250, then the verdict for the plaintiff should be for only $1,250.

Also an instruction to the effect that the cattle unloaded from the car were still in transit. And one to the effect that to constitute a waiver of a condition in

the policy an intention to waive must be shown or else conduct calculated to mislead the other to her injury.

Defendant asked several instructions to the effect that the holding of a post-mortem examination without notice to the defendant was a forfeiture of the policy, and a peremptory instruction for a verdict for the defendant, all of which were refused. To the giving and refusing of instructions exceptions were duly preserved.

There was a verdict for the plaintiff for $5,065 and judgment accordingly, from which the defendant appeals.

I. In support of its claim that the peremptory instructions for a verdict for defendant should have been given, the defendant relies on two propositions: (a) that there was no substantial proof that the death of the insured resulted from accidental means, and (b) that the holding of the post-mortem examination without notice to the defendant forfeited the policy.

a. The argument is that as no one actually saw the horn of the bull strike the man, and, as he himself said, immediately after the motion of the bull, which the witness saw, that he was not hurt, the conclusion that he was so struck in the abdomen and that that caused his death rests on mere conjecture. The witness saw the bull toss his head in the direction of the man and whilst he could not just see the result yet the circumstance immediately excited apprehension in the mind of the witness and he asked, "Did he catch you?" to which Loesch answered, "Yes, but he did not hurt me." No one can doubt that the bull struck him, and there is no reasonable accounting for the pain in the abdomen which was soon experienced, the bruised condition and consequent inflammation of the intestines that followed, otherwise than that he was struck in the abdomen by the horn of the bull. The triers of the facts were justified in reaching that conclusion. The mere fact that the man did not immediately suffer pain

is of no significance. It was a question for the jury, at all events, and they were authorized to draw their conclusions from all the circumstances. Even if we were at liberty to weigh the evidence, we could find no fault with the verdict on this question of fact.

*b.* On the proposition that the plaintiff's rights under the policy became forfeited because the post-mortem was held without notice to the defendant, the plaintiff takes the position that the defendant by furnishing the blank form for making proof of the loss waived its rights under that clause. In support of the waiver theory plaintiff cites Trippe v. Provident F. Society, 140 N. Y. 28, and Unthank v. Trav. Ins. Co., 4 Biss. 357. But the circumstances under which the insurance companies were held to have waived the benefits of similar clauses in their policies in those cases were quite different from circumstances in this case.

The instruction given by the court at the request of the defendant in this case to the effect that to constitute a waiver an intention to waive must appear or else conduct to mislead the other party into a belief that waiver was intended, stated the law correctly on this point. The conduct of defendant's agent when he furnished the blank as clearly showed an intention not to waive, and not to allow the plaintiff to think that a waiver was intended, as it was possible to show.

But we are satisfied that the holding of the post-mortem examination without notice to the company, under the circumstances shown by the evidence in this case, did not have the effect to forfeit the plaintiff's rights under the policy. A clause of forfeiture is not to be strictly construed in favor of the company in such case. [McFarland v. Accident Assn., 124 Mo. 204.] On the contrary, whilst it should be given a reasonable interpretation, yet the inclination of the court should be against the forfeiture.

The design of this clause in the policy was to enable the company to learn the cause of the death of the in-

sured as that cause might be shown by a post-mortem examination if one should be held.   Whatever such an examination might show, the defendant was entitled to an opportunity to know.   It is a reasonable requirement, under reasonable interpretation, and a violation of its terms under circumstances reasonably showing disadvantage to the company, would work a forfeiture of the policy. . But there is nothing in this case to indicate any such disadvantage.   In the first place, it is very doubtful if the plaintiff was responsible for the act.   If it occurred without her knowledge or consent it would be no defense to the suit.   She testified that she did not know what the word meant and did not know what the physicians were doing.

But however that may be, as soon as the attending physician saw the policy and read this clause, which was immediately after the post-mortem had been held, he went to the office of the defendant and informed them what had been done and offered to allow them to make a re-examination.   There is no suggestion in the record of any fact or theory which would tend to show that a re-examination of the body at that time would not disclose to the eye of the defendant's surgeon everything that the first examination disclosed to the physicians who made it.   We do not say that the first examination might not have disclosed facts that could have been hidden from one making a second examination, but there is no such suggestion in this record and we are not led, therefore, into such an inquiry.

We hold that the fact that the post-mortem examination was held without notice to the defendant, is no bar to the plaintiff's action under the circumstances disclosed by the evidence in this case.

The court did not err in refusing the peremptory instruction for a verdict for defendant.

II.   We come now to the second ground of defense founded on this clause of the application which was a part of the contract of insurance:   "I agree that for

any injury, fatal or otherwise, received by me while exposed temporarily or otherwise to a hazard classed by the company in its manual last issued prior to this date, as more hazardous than that given as my occupation in this application, the company's liability shall be limited to the amount that the premium paid by me would purchase in such more hazardous class. I agree that the classifications in said manual shall be and are a part of this contract.''

The manual referred to was in evidence and it showed that the occupation of ''stock-dealer, not working or tending in transit,'' was classed as a preferred risk, that in that class insurance to the limit of $5,000 could be had for a premium or fee of $25, whilst the occupation of ''stock-dealer, tending stock in transit,'' was classed as extra hazardous, that in that class the limit of insurance was $1,000 and the premium or fee was $20.

The first instruction for the plaintiff directed the jury to find for the plaintiff in the sum of $5,000 and interest if they found from the evidence, *inter alia,* that when the insured received his injuries he was a stock-dealer, visiting yards, not working nor tending in transit, and the second instruction is to the effect that unless the jury should find from the evidence that the act of untying the bull was designated in the manual as more hazardous than the occupation of the insured specified in the application, if the verdict was for the plaintiff it should be for $5,000.

Both of those instructions were erroneous: the first because there was no evidence to sustain the hypothesis that the insured was only a stock-dealer visiting yards, not working nor tending in transit, for the plaintiff's own evidence showed that he was working and tending those cattle in transit. The plaintiff's evidence did not show that he had traveled on the train with the cattle, but it did show that he was in the car attending to them before they were unloaded. Until

the cattle were out of the hands of the railroad company and in the pens of the stock yards they were in transit.

The second instruction was erroneous because it submitted to the jury to interpret the meaning of the contents of the printed manual. It was the duty of the court to interpret the written and printed documents. In this instruction the court interpreted the .clause in the contract in question but left the jury to find what was contained in the manual.

This clause in the contract is clumsily worded; it could not be defended under strict rules of grammar. But courts are often required to discover the meaning of contracts awkwardly expressed.

The fault of the sentence is that literally it attempts to draw a comparison between two subjects in reference to a quality which they do not possess in common. In the beginning it refers to a hazard and in the conclusion compares the hazard to an occupation, that is to say, it speaks of a hazard more hazardous than the occupation. "I agree that for any injury . . . received by me while exposed to a hazard . . . classed by the company in its manual as more hazardous than that given as my occupation in this application," then the company's liability is to be limited, etc. The meaning undoubtedly is that he agrees that for any injury received by him while exposed to a hazard peculiarly incident to an occupation classed in the manual as more hazardous than that given by him as his occupation in the application, then the company's liability should be limited.

The court attempted to follow too literally the language of the clause and thereby fell into the error of instructing the jury that unless the manual classified the act of untying the bull as more hazardous than the occupation of a stock-dealer not tending stock in transit, then if they found for the plaintiff the verdict should be for the full amount.

Taking the plaintiff's evidence alone there is no

doubt that the insured was at the time he received his injury exposed to a hazard that was peculiarly incident to an occupation which was classed in the manual as more hazardous than that named in the application as the occupation of the insured, and therefore by the terms of the contract the recovery should be limited to the amount of insurance the premium paid would purchase in the more hazardous class, which it is admitted was $1,250.

We have all the facts before us, therefore, there is no necessity for remanding the cause for a new trial.

The judgment of the circuit court is reversed and judgment will be entered here for the plaintiff for $1,250 and interest at six per cent from February 20, 1901, and costs in the circuit court, appellant to recover the costs in this court.

All concur.