ELLA WINTERGERST et al., Appellants, v. COURT
OF HONOR, Respondent.

St. Louis Court of Appeals.   Argued and Submitted October 9,
1914.   Opinion Filed November 3, 1914.

1. FRATERNAL BENEFICIARY ASSOCIATIONS: Construction
   of Certificates. Fraternal beneficiary associations, although
   formed to carry out a scheme of benevolent aid, are neverthe-
   less insurers and are to be so treated, and benefit certificates
   issued by them and their laws which enter into the contract
   are to be construed strictly against them.

2. ————: Rules and Regulations. While members of fraternal
   beneficiary associations are presumed to have assented to the
   rules and regulations of the association, they are nevertheless
   entitled to have such rules and regulations applied to them
   in the same manner as such rules and regulations are applied
   to other members and not to have their rights forfeited by a
   strained, harsh or too technical interpretation or application
   thereof.

3. ————: ————: **Estoppel.** A fraternal beneficiary association may be estopped from claiming a strict enforcement of its rules, the effect of which will work a forfeiture, when, by its course of conduct, it has led one dealing with it as a member to believe, and to act on the belief, that a strict compliance with the rules will not be required, nor his rights lost by a failure to comply therewith, and this is particularly so when the association has treated him as a member in good standing up to the time of his death and has accepted and retained dues and assessments paid by him.

4. ————: ————: **Presumptive Knowledge of Rules.** A member of a fraternal beneficiary association may be presumed to know the laws of the association, but there is no rule imposing such knowledge on an applicant for membership, so that one cannot be denied the rights of a member merely because he was not initiated into the association in the manner prescribed by its by-laws.

5. **PRINCIPAL AND AGENT:** Authority of Agent: Estoppel. One who receives the money of another, through a person purporting to act as his agent, and retains the same, will not be permitted to repudiate the transaction on the ground that such person acted without authority.

6. **FRATERNAL BENEFICIARY ASSOCIATIONS:** Initiation of Member: Failure to Follow Requirements of By-Laws: Estoppel. Insured, having applied for a death benefit certificate from defendant fraternal beneficiary association, was accorded a private initiation and obligation at his home, in violation of its by-laws, and a certificate was issued to him. He was assured by an officer of the subordinate lodge, who was also one of defendant's supreme officers, that he was being initiated in due form. Such private initiations were customary in the city where insured became a member, several hundred members having been initiated in that manner. After such initiation, insured was permitted to attend one or more meetings of the subordinate lodge, and at one of such meetings he asked in open meeting if there was anything more necessary for him to do to become a member, and was told that there was not, after which he participated in the proceedings of the meeting. He afterwards paid dues and an assessment to the proper officer of the subordinate lodge, which were not returned or tendered to him or to his beneficiaries. The assessment and dues, however, were not transmitted to the supreme officer by the officer of the subordinate lodge who received them. In an action on the certificate, upon the death of insured, *held* that defendant was estopped to claim that insured was not a member of the order on the ground that he had not been legally initiated; the act of the supreme officer in assuring

insured that he was initiated in due form being the act of defendant and binding on it, and the payment of dues and assessments also being binding, so far as insured was concerned, notwithstanding such payments were not forwarded to the proper supreme officer.

7. PARTIES: Pleading: Misjoinder: Mode of Objecting. Where, in an action on a death benefit certificate issued by a fraternal beneficiary association, plaintiffs sued jointly as beneficiaries, relying on a change of beneficiaries attempted to be made by insured as being valid, the failure of defendant to challenge, by demurrer or answer, plaintiffs' right to join as plaintiffs did not prevent it from raising that point on appeal, since plaintiffs' joint interest was a matter to be proven and went to their right of recovery, of which defendant was entitled to avail itself under a general denial.

8. FRATERNAL BENEFICIARY ASSOCIATIONS: Change of Beneficiaries: Effect of Failure to Issue New Certificate: Right to Maintain Action at Law. The by-laws of defendant fraternal beneficiary association provided that, if any member in good standing desires to change his beneficiary, he shall pay a fee of fifty cents to the recorder of the subordinate lodge, and deliver the benefit certificate to him, with a written surrender on the back thereof and written directions as to the change desired, and such officer shall forward the same with the fee to the supreme recorder, and thereupon a new certificate shall be issued as requested. Insured, having a certificate payable to his daughter as beneficiary, and desiring to change the same, so that it should be payable to his daughter and his wife equally, made an endorsement on his certificate, whereby he designated the two as beneficiaries, and delivered the certificate with the necessary fee to the recorder of the subordinate lodge, who accepted it from him and transmitted it to the supreme recorder by mail. There was evidence that the supreme recorder did not receive the certificate and fee, and a new certificate was never issued. *Held*, that, since no act of approval by the supreme body of the association or its supreme recorder was required to validate the change of beneficiaries, but a new certificate issued as of course, there was a change of beneficiaries, which a court of law as well as a court of equity will recognize, and hence a suit at law for the death benefit was properly brought in the joint names of the widow and daughter.

9. ACTION: Form: Applying Equity Principles in Action at Law. The Code abolishes the distinction in the form of actions, although generally applying to each case the principles governing the class of cases to which it belongs—that is, while the form is abolished, a distinction is still recognized between the

two forms of action; but that does not mean that equitable principles are not applied in actions at law.

10. **FRATERNAL BENEFICIARY ASSOCIATIONS: Waiver of Defenses: Taking Proofs of Loss.** A fraternal beneficiary association does not estop itself from availing itself of defenses to an action on a benefit certificate by sending blank proofs of loss to the beneficiary and putting him to the expense of filling up the same, where the blanks contain a notice to the effect that, in furnishing them, the association reserves all its rights under the contract and waives none of the conditions thereof.

11. **APPELLATE PRACTICE: Disposition of Case: Question for Jury.** Although there is evidence that would warrant a finding for the plaintiff under the law, yet the appellate court, in reversing a judgment for defendant and remanding the cause, will not give the lower court directions to enter judgment for plaintiff, since it is the province of the jury to determine whether or not the evidence warranting a finding for plaintiff is true.

Appeal from St. Louis City Circuit Court.—*Hon W. B. Homer,* Judge.

REVERSED AND REMANDED.

*Judson, Green & Henry* for appellants.

(1) The trial court committed reversible error in declaring as a matter of law, at the request of respondent, that the beneficiary in the certificate sued on was never changed from Pearl Riley, the original beneficiary, to Ella Wintergerst and Pearl Riley, and that consequently, the appellants having sued on a joint cause of action could not recover. The change in beneficiary made by Charles Wintergerst before his death, is valid and binding on respondent. Bacon Benefit Societies (3 Ed.), sec. 309; Police Relief Association v. Tierney, 116 Mo. App. 447; Grand Lodge v. O'Malley, 114 Mo. App. 191; A. O. U. W. v. McFadden, 215 Mo. 269. (a) The recording of the change at Springfield in the lifetime of Charles Wintergerst was not essential to the validity of the change, but it became effective as

soon as Charles Wintergerst signed the request for a change and had it witnessed and delivered for transmission to Springfield. Hoffman v. Grand Lodge, 73 Mo. App. 47; McGowan v. Forresters, 104 Wis. 173; Niblack on Benefit Societies, sec. 223; Hirschel v. Clark, 81 Iowa, 200. The recorder of the local lodge in forwarding the certificate to Springfield to have a record of the change made, acted as the agent of the respondent and not as agent of appellants. Nat'l Assn. v. Kirgin, 28 Mo. App. 80. (*b*) There is no difference in this respect between a suit at law and one in equity. McGowan v. Forresters, 104 Wis. 181. The *obiter* suggestion of the Kansas City Court of Appeals in the Ross case, 89 Mo. App. 621, to the effect that there might be a difference between law and equity in this respect is out of harmony with all other decided cases on this subject; and besides, that opinion was expressly disapproved by the Supreme Court of Missouri in the McFarland case, 213 Mo. 269. See also McGowan v. Forresters, 104 Wis. 181; Hirschel v. Clark, 81 Iowa, 200,28 Mo.App.82. The highly technical decision of the trial court on this proposition is contrary to the spirit of modern jurisprudence and reads like a decision from the middle ages. (*c*) In fact, this case is stronger in this respect than the interpleader suits before this court when it decided that such a change was valid without being approved by the supreme recorder, because in these interpleader suits the original beneficiary, the party directly interested, was contending that the attempted change was ineffectual; while in this case the original beneficiary has accepted the change and is asking that it be recognized, while the society is the objector, and its rights, as a matter of fact, are not affected by the change. Pearl Riley will be bound by the judgment in this case and respondent cannot be called upon to pay twice. What, then, is its interest? (2) Even if the change made in the beneficiary of the original policy had not been valid and

binding upon respondent, it waived its right to object by failing to plead in its answer a misjoinder of parties plaintiff. The trial court committed reversible error in refusing appellant's instruction No. 11 covering this proposition. Rev. Stat. 1909, secs. 1800 and 1804; Webster v. Railroad, 116 Mo. 114; Van Hoozier v. Railroad, 70 Mo. 145; Chouteau v. Hewitt, 10 Mo. 131. (3) The trial court committed reversible error in refusing to declare that the provisions of section 122 of the constitution of respondent society which requires that applicants who are obligated at their homes must sign a written statement of the reasons which prevent them from attending at a meeting of the district court for initiation, are directory merely, and not mandatory, and that a failure to comply therewith will not render the obligation void if it is regular in other respects. The constitution merely requires that the applicant shall state in writing that there are unavoidable reasons other than sickness or accident which prevent his initiation at a regular lodge meeting. He is not required to specify what these reasons are, except that they are not sickness or accident; and it does not give the local recorder, the supreme recorder, the district court or any other officer or body the right or power to pass upon the sufficiency of such statement when so made by the applicant. On the contrary, such statement, when signed by the applicant, is conclusive upon the society and its officers, and they have no power to review it or to reject it. Therefore, this provision is merely directory and not mandatory. Suppose the applicant should sign such a statement of reasons, and the officers of the local lodge should fail to file it among the records or to report it. Would that failure invalidate the obligation? Police Relief Assn. v. Tierney, 116 Mo. App. 465; Mystic Circle v. Crawford, 75 S. W. 845; Lorscher v. Knights of Honor, 2 L. R. A. 206; Matthews v. Modern Woodmen, 236 Mo. 327. (4) Even if the provisions of this section of the

constitution were mandatory, yet the evidence shows that the respondent society and its supreme officers waived a compliance with this section in the case of nearly all the 213 members of Mound City Lodge No. 807, and received and accepted Lawrence Riley and Mr. and Mrs. Turner as regular members, although it knew they were obligated exactly as Wintergerst was; and it accepted many others as regular members, obligated in the same way, without requiring any further initiation, and continued to collect their dues and assessments with full knowledge of the fact that they had been obligated at their homes in the same manner. It had no right to waive the requirements of the constitution in the case of all these who continued in good health, and to insist that poor sick Wintergerst was not a member, when he came in exactly as all these others had done. It could not enforce this provision when it suited its exigencies and then ignore it whenever it wished. Such societies may waive these provisions of their constitutions. Shortle v. Brotherhood, 139 Mo. App. 440; Edmonds v. Modern Woodmen, 125 Mo. App. 214; Zahm v. Royal Union, 153 Mo. App. 70; McMahon v. Maccabees, 151 Mo. 522; Burke v. Grand Lodge, 136 Mo. App. 450; Britt v. Woodmen, 153 Mo. App. 698. It is also well established that even the local officers of such a society may waive any initiation or obligation, or even the delivery of the certificate, notwithstanding the constitution requires such things as conditions precedent to liability. Norman v. Commercial Travelers, 145 S. W. 853; Rhodus v. Insurance Co., 156 Mo. App. 281. But in this case we have acts of waiver by the supreme officers with full knowledge, and by a deputy organizer who is the representative of the Supreme Chancellor. (5) The court also committed reversible error in refusing to declare as a matter of law that the sending of blanks for proofs of death to appellants by respondent, and requesting them to prepare affidavits and make death proofs at

an actual expense of $4 without advising them that
Charles Wintergerst was not a member on account of
his irregular obligation, when the respondent at that
time had full knowledge of all the facts and had al-
ready officially declared that Charles Wintergerst was
not a member and had already officially instructed its.
local recorder to enter on his record the lapse of the
certificate and to mark the same void, was in law a
waiver or estoppel; and respondent cannot now insist.
that Charles Wintergerst was not properly obligated.
Society v. Wilson, 91 Ill. App. 667; Roark v. Trust Co.,.
130 Mo. App. 401; Dolan v. Town Mut. I. Co., 88 Mo.
App. 666; Burham v. Casualty Co., 117 Mich. 142;.
Traders Ins. Co. v. Johnson, 200 Ill. 359; Trippe v..
Society, 140 N. Y. 23; Tripple Link I. Co. v. Johnson,.
101 Ill. App. 559. The notice printed on these blanks
to the effect that the respondent did not waive any
rights by submitting these blanks, does not prevent an.
estoppel under the facts we have here, because that.
notice does not disclose the facts then within the knowl-
edge of the supreme recorder. Burnham v. Casualty
Co. 117 Mich. 142; Martinson v. Ins. Co., 64 Mich. 362;
Home Ins. Co. v. Kennedy, 47 Neb. 138; Georgia Home
Ins. Co. v. Moriarity, 37 S. W. 628. (6) Respondent is
further barred from insisting in this action that Charles
Wintergerst was not a member of the society by its
failure to tender back and pay into court, the August
and September dues and assessments paid by Charles.
Wintergerst, amounting to $6.16. These dues and as-
sessments were duly paid to the local recorder, the
regular authorized agent of the society for that pur-
pose, and under the constitution payment to him was
payment to the society. Leech v. Telegraphers, 130
Mo. App. 5; Norman v. Travelers, 145 S. W. 854;
Rhodus v. Ins. Co. 156 Mo. App. 281; Home Forum
Benefit Assn. v. Jones, 20 Tex. Civ. App. 68; Andre
v. Modern Woodmen, 102 Mo. App. 377.

*R. P.* and *C. B. Williams* for respondent; *Wm. B. Risse* of counsel.

(1) The recorder of the local court is without authority to waive any of the provisions or requirements of the constitution or by-laws. Session Acts, 1911, page 292, sec. 22; Day v. Supreme Council, 174 Mo. App. 260; Clair v. Royal Arcanum, 172 Mo. App. 109; Brittenham v. Sovereign Camp, 167 S. W. 587. (2) This being a suit at law upon the benefit certificate, it was necessary to show that the effort to make change of the beneficiary had ripened into a completed change so far as the society is concerned. It had not, for the certificate was not delivered to the recorder until after the death of Wintergerst, and never did find its way into the hands of the officer who could have issued another certificate, as provided for by the by-laws. If the certificate had been a valid and binding one, we concede that the new beneficiaries would have the right in a court of equity to claim the fund, but in a court of law it is an incompleted transaction. It is apparent that the society would never have issued the certificate if the old certificate had come to its hands. (3) Membership in the society is a prerequisite to the right to a certificate and this cannot be waived by the society or its subordinate officers. Porter v. Society, 167 S. W. 578; Sloan v. Society, 139 Mo. App. 443; Hiat v. Society, 99 Mo. App. 105; Loyd v. Society, 113 Mo. App. 19; Shortel v. Modern, Etc., 139 Mo. App. 433; McLindau v. W. O. W., 106 Tenn. 695; Kempe v. U. W. W., 44 S. W. 688 (Texas); Wilcox v. Sor. Camp, 76 Mo. App. 573; Watkins v. Supreme Lodge, 82 Tex. 301; Steele v. Fraternal, Etc., 74 N. E. 122 (Ill.). (4) Furnishing blanks for proofs of death, at the request of attorneys for plaintiff, could not have the effect of making a contract where none existed. Porter v. Society, 167 S. W. 578; Loesch v. Union Casualty, 176 Mo. 654; Tuttle v. Iowa State, 72 R. A. (U. S.), 231. (*a*)

The by-laws of the society expressly provide that the sending of the blank shall not be a waiver. (b) The notation on the blanks reserved all rights in sending the blanks forward. (5) This being a suit by two plain-tiffs and the certificate being in favor of only one, the suit must fail. Yore v. Yore, 240 Mo. 459.

REYNOLDS, P. J.—Action by appellants, who claim to be the beneficiaries designated in a .certificate of membership said to have been issued to one Charles Wintergerst. It is claimed that this certificate was issued on or about June 30, 1911, to Charles Wintergerst as a member of the defendant company, a fraternal insurance corporation, organized under the laws of Illinois and authorized to do business in this State as such organization; that by the benefit certificate issued, defendant, on the death of Charles Wintergerst, became obligated to pay to appellant Pearl Riley $1000, on satisfactory proof of the death of Wintergerst; that after becoming a member of the organization, Wintergerst paid all of his dues and assessments as such member until his death, and at the time of his death was a member of the society in good standing; that prior to his death, and on or about September 28, 1911, Wintergerst made a change in the beneficiary and designated the appellants, Pearl Riley and Ella Wintergerst, plaintiffs below, as joint beneficiaries, each to receive one-half; that Charles Wintergerst died on or about September 28, 1911, then a member of the order, and that after his death, the appellants, at the request of respondent, prepared and submitted proofs of death in proper form, which proofs are still retained by respondent; that after the death of Charles Wintergerst, the appellants delivered the benefit certificate to respondent to enable it to have the change of beneficiaries duly entered on its record at Springfield, Illinois, the home office of respondent, and to have issued a new certificate, payable to them in accordance

with the requested change, but that respondent has retained possession of the certificate and has ever since refused to return it to them, or to issue a new certificate, and although requested so to do, has failed and refused to pay them the sum of $1000, or any part thereof. Judgment is demanded for that amount.

The answer of respondent, admitting its incorporation under the laws of Illinois and authority to do business in this State as a Fraternal Beneficiary Association, avers that it is so engaged. It is also admitted that Ella Wintergerst and Pearl Riley, the plaintiffs, are respectively the widow and daughter of Charles Wintergerst. It is averred that on June 23, 1911, Charles Wintergerst made application in writing to a district court or subordinate lodge of respondent for a membership certificate in the sum of $1000, in which application the plaintiff, Pearl Riley, was named as beneficiary. The application of Charles Wintergerst for membership is set out, in which for himself, his heirs and beneficiaries, he waives all claim to benefits under the application until it shall have been approved by the supreme medical director of the society, a certificate of membership issued and duly signed by the supreme chancellor and attested by the supreme recorder, under the seal of the society, and until he shall have been initiated or obligated at a regular or special court meeting at the regular meeting place of the court to which the application is made, or shall have been obligated elsewhere under a dispensation granted by the supreme chancellor under the seal of the society, and shall have signed and accepted such certificate and made all payments required by the constitution, and that the benefit certificate issued in pursuance of this application shall be delivered to him while in sound health. It is admitted that the medical examination had been made of Wintergerst on or about June 24, 1911, and the certificate of the medical examiner at-

tached to the application and forwarded to the defendant's chief office in Springfield, Illinois, and a certificate issued thereon and forwarded to the recorder of the district court or subordinate lodge to be delivered to Wintergerst, in accordance with the requirements of the agreements above set out, and in accordance with the requirements and laws of defendant after Wintergerst should become a member of the defendant by being initiated or obligated at a regular or special meeting or obligated elsewhere under a dispensation granted by the supreme chancellor. It is further averred that under the laws of defendant and under the terms of the certificate in question, the certificate could not be delivered to Wintergerst until he had become a member of the society by being initiated or obligated in accordance with the laws of the society.

Another section of the law of the society is set out, which is to the effect that if the applicant for membership fails to report for medical examination within thirty days after his election, or fails to report for initiation within sixty days from the date of his benefit certificate, he shall forfeit his admission fee, and if he desires at the expiration of that time to become a member he must again make application, in which case the admission fee already paid may be credited on his application.

Another section of the law of defendant is set out, which is to the effect that no certificate of membership shall be in force until the applicant shall have been initiated or obligated at a meeting of the district court or obligated under a dispensation granted by the supreme chancellor, or obligated by the chancellor or recorder of the court, where the applicant in writing on a form prescribed by the society states that for unavoidable reasons other than sickness or accident, he cannot appear at meetings of the court for initiation or obligation within sixty days from the date of his certificate; which written statement shall be filed

with the recorder of the court, who shall forward the same to the supreme recorder with his next "pass" report, and it shall then be filed with the member's application; "and until he shall have signed and accepted said certificate and made one payment of the assessments and dues as indicated in the constitution and before the recorder shall deliver the benefit certificate, the initiate must, in person, while in good health, sign the certificate in his presence." Quoting this provision, the answer alleges that the certificate never became operative or in force by reason of the failure of Charles Wintergerst to report for initiation or obligation within sixty days from date of the benefit certificate, nor was he initiated or obligated at a meeting of the district court, nor was he within sixty days from the date of the certificate obligated under a dispensation granted by the supreme chancellor, nor by the chancellor or recorder of a subordinate lodge of defendant, "after setting out in writing on a form prescribed by defendant the reason why he could not appear at a meeting of the district court for initiation or obligation within said sixty days from the date of said certificate, and never paid the assessment and dues as provided in the laws of defendant." By reason of all of which it is averred that Charles Wintergerst never became and never was a member of the defendant order and the certificate referred to never became operative or in force.

After a general denial the reply avers that even if it were true that Charles Wintergerst did not comply strictly with each and every detail of the rule of the defendant society respecting the manner of obligating and initiating new members, which the plaintiffs deny, that defendant, with full knowledge of the manner of Wintergerst's obligation or initiation as a member of the defendant society waived such strict compliance by accepting from Wintergerst initiation fees amounting to one dollar, a monthly assessment for the

month of August, 1911, amounting to $3.08, and delivered to him as a member the benefit certificate, and by accepting assessment for the month of September, 1911, amounting to $3.08, and by retaining all said sums, and further by accepting Wintergerst as a member in good standing and permitting him to attend the regular meetings of the society as a member and to vote as a member, with full knowledge of the manner of his obligation or initiation and by advising him, when he attended the open meeting of the society, that he had complied with all of the laws and rules of the society and was a member in good standing. It is further set up that it was a common custom and practice of the defendant society for the recorder of the local court to obligate applicants for membership at their homes without requiring such applicants to sign any written statement of reason why they could not appear at a meeting of the local lodge for obligation and that several hundreds of members have been received in its local court in St. Louis in that manner, and that defendant, with full knowledge of that fact, has accepted those so received as members, given them certificates of insurance and membership and has accepted and retained monies paid by them for dues and assessments with full knowledge of these facts.

Further replying, plaintiffs say that defendant should not now be permitted to make the defense that Wintergerst was not a member, because after his death defendant, with full knowledge of the manner of Wintergerst's obligation as a member, had requested plaintiffs to submit proofs of death and had furnished them blanks for that purpose and that plaintiffs did, at considerable cost and expense, prepare and submit such proofs of loss.

The trial was before the court without the intervention of a jury. Giving a number of declarations of law asked by defendant and refusing all those asked by plaintiffs, the learned trial court found in favor of de-

fendant. From this, filing their motion for a new trial and saving exceptions to the adverse rulings of the court, plaintiffs have duly perfected their appeal to this court.

Learned counsel for the respective parties have filed very elaborate briefs and arguments and made vigorous oral arguments before us in support of their respective positions. With all respect for those learned counsel, and fully appreciating their efforts to aid the court, we think that the decision of this case lies within a very narrow compass. In point of fact, its determination depends upon the answer to just two questions. First: Was Charles Wintergerst a member of the defendant order? Second: Are these plaintiffs his duly designated beneficiaries? An affirmative answer to both of these questions must result in a verdict for plaintiffs. A negative to either will defeat them.

The answer to both of them depends upon questions of fact and of law. Contracts of this class, entered into by benevolent-fraternal organizations, have been before our courts so often that it is unnecessary to review or repeat the law as announced in the numerous decisions which is to be applied to the contracts of like organizations. A few fundamental propositions lie at the foundation of all these decisions. One of these is, that contracts of indemnity or insurance, such as evidenced by these benefit certificates and the laws of the order which enter into the contract, just as are policies issued by regular insurance companies, are to be construed strictly against the organization, the courts being reluctant to decree forfeiture, and that the organization, although one formed to carry out a scheme of benevolent aid, is still an insurer and to be so treated. Another is that while parties enter into these organizations voluntarily and are presumed to have assented to the rules and regulations of the order, they are entitled to have those rules and regulations applied to them as they are to other members,

and not to have their rights forfeited on a strained, harsh or too technical interpretation or application thereof. Another rule and following the above is, that these orders, like all bodies, whether corporate or individual, may be estopped from claiming a strict enforcement and application of the rules of the order, when to effect such will work a forfeiture, when by their course of conduct they have led those dealing with them as members to believe and to act upon the belief that a strict compliance with the rules would not be required, nor their rights lost by failure to comply. These are particularly so when the organization has treated the party as a member in good standing up to the time of his death, accepting from him dues and assessments paid by him during his life, and retained by the organization.

Taking up the first of the questions, that as to the membership of Charles Wintergerst in the order, we are unable to agree to the view which the learned trial court took of the law as applicable to the facts in evidence, and which view undoubtedly governed him in his conclusion on the facts.

There is evidence in the case that the provisions of the laws of the society relating to the initiation of a member were not strictly complied with. That is to say, Wintergerst was not initiated or obligated at a meeting of the district court, nor obligated under a dispensation granted by the supreme chancellor under seal of the society. But there is evidence in the case that he was obligated at his (Wintergerst's) home by the recorder of the court. It is also in evidence, in fact conceded, that, as preliminary to this, Wintergerst had not signed the form prescribed by the society, or in fact any paper, to the effect that for unavoidable reasons other than his sickness or accident, he could not appear at meetings of the court for initiation or obligation within sixty days from the date of his certificate. It affirmatively appears that no such form

was ever presented to Wintergerst by the recorder or any one else, or that he ever had any actual notice that it was required. No reference is made in the application signed by Wintergerst to the necessity of any such form being signed, nor in fact to the provision of the law authorizing what may be called private initiation. The provision for private initiation is in another law of the order, of which there is no proof that Wintergerst had any knowledge. A member, after becoming such, may be presumed to know the laws of the order, but we know of no rule which imposes such knowledge on an applicant for membership. So far from Wintergerst having any knowledge of this latter law, there is evidence that the recorder, who was also then a deputy supreme chancellor, assured Wintergerst that he was being initiated in due form. It is also clear that no such written statement was ever filed with the recorder of the court or that the recorder forwarded any such paper to the supreme recorder with his "next pass report," or that any such paper was filed with Wintergerst's application. The learned trial court apparently proceeded upon the theory that not having signed this application, but having been obligated by the recorder of the district court, and Wintergerst not having, within sixty days from the date of the certificate, presented himself for initiation at a meeting of the court, he was not a member. We cannot agree to this proposition. There was evidence in the case that it was a custom to obligate members without first requiring this application and that persons so obligated to the number of a hundred or more were now members of this very court. It is furthermore in evidence, as above noted, not only that the recorder, then a deputy supreme chancellor, had then assured Wintergerst that he was then duly initiated and a member, but that after being obligated in this manner at his home by the recorder, Wintergerst attended

one or more meetings of the court, and at the first meeting thereafter which he attended, he (Wintergerst) asked in open meeting if there was anything more necessary for him to do to make him a member and was then told there was not; that he was a member. Wintergerst thereupon participated in the proceedings of the meeting, even taking part in voting on the election of officers of the court. Over and above this, he paid assessments made on him as a member during his life, amounting to $2.78, and also general and local dues amounting to thirty cents more, a total of $3.08. These payments were made by him, received by the proper officer of the local court and never returned or tendered to either Wintergerst or to these plaintiffs. It is true that it appears that the recorder, who collected this first assessment and dues, did not transmit them to the supreme court of the order. Neither Wintergerst nor his beneficiaries can be held responsible or in fault for this defalcation of the recorder. That is a matter between the recorder and his court and the supreme court of the order, and with which these plaintiffs have no concern. If the trier of fact found these things to be so, and there is practically no contravailing testimony, then as a matter of law this defendant is estopped from disputing the membership of Wintergerst. This is so even if the laws of the order disclaim responsibility for the acts of subordinate bodies. One cannot receive and retain the moneys of another and then repudiate the transaction because the agent was without authority, knowing that the money had come from that other through that agent. We have referred to the fact that there is evidence that the recorder was also at the time a deputy supreme chancellor. If that is a fact, then his action in the premises and his knowledge is the act and the knowledge of and is binding upon the order, for he may be said to have represented not simply the local council but the supreme order

itself. This question has been so thoroughly discussed by our court in Griffith v. Supreme Council of Royal Arcanum, 182 Mo. App. 644, 166 S. W. 324, that we refer to that and the cases there cited, particularly McMahon v. Macabees, 151 Mo. 522, 52 S. W. 384, in support of this view. In brief, the question of membership or nonmembership was a question in part of fact and in part of law. If the jury or trier of fact found the facts to be as we have indicated, then the trial court should have declared as a matter of law that Wintergerst was, up to the time of his death, a member of this order, and that the order is now estopped from denying his membership.

The other question as to the right of these plaintiffs to recover depends upon the fact of the execution by Wintergerst of an indorsement on the certificate of membership, whereby he designated these two plaintiffs as beneficiaries in place of the one who had been originally designated.

It is urged by the learned counsel for appellants, that inasmuch as defendant had not, by demurrer or answer, challenged the right of these parties plaintiff to join as parties plaintiff, that defendant is now estopped from making any such claim. That is a misapprehension of the law. Their joint interest was a matter to be proven; went to the right of recovery. Even under a general denial defendant could avail himself of failure to prove joint interest, for that went to proof of the cause of action.

The learned counsel for appellants refer, among other authorities, to Reifschneider v. Beck, 148 Mo. App. 725, 129 S. W. 232, in support of their proposition that the defect of parties plaintiff not appearing on the face of the petition, that point should have been raised by answer. What is said in Reifschneider v. Beck, supra, was on a very different proposition. In that case it was contended that there was a misjoinder of parties defendant and that one of the defendants

so joined was shown not to have been a party to the contract there in suit. The plaintiffs, however, occupy a very different position from defendants in cases of this kind. This is very well illustrated in Yore v. Yore, 240 Mo. 451, 144 S. W. 847. There at page 462, it is said: "Where plaintiffs sue jointly, as in this case, they must all show a right to recover, or none can recover They must show an obligation upon the part of the defendant to them jointly and not to them individually, and this because they have pleaded an obligation to them jointly. Proof of an obligation to only one or more (but less than all), would be proof at variance with the obligation pleaded in the petition." That, as will be seen, refers to the position that plaintiffs occupy in such a case. The position of the defendants, however, is different, for Judge Graves continues at the same page and immediately after the part just quoted: "If a plaintiff sue two or more defendants he may have a judgment against one or more of them according to the liability shown." That was exactly what we held in Reifschneider v. Beck, supra, illustrating our position by reference to Slaughter v. Davenport, 151 Mo. 26, 51 S. W. 471.

The laws of the order provide that if any member in good standing at any time desires a change in the name of his beneficiaries, he shall pay to the recorder a fee of fifty cents and deliver to him his benefit certificate, with written surrender on the back thereof, and directions as to the change desired in the beneficiary; thereupon the recorder shall forward the same with the fee of fifty cents to the supreme recorder, "and thereupon a new benefit certificate shall be issued as requested." It will be noted that no act of approval by the supreme body or its recorder is here required to validate the change. If changed, a new certificate must issue. There is testimony in the case to the effect that the change in the designation of the beneficiary

was made by Wintergerst in his lifetime on this certificate; that he designated plaintiffs as beneficiaries, each to have one-half, and it is conceded that one is his widow and the other his daughter, and that they, as such, fall within the class of beneficiaries provided for by the scheme of the order. There is also evidence tending to prove that the certificate with the necessary fee was thereupon delivered to the recorder of the local court, was accepted by him and transmitted by him to the supreme court of the order by mail. There is evidence in the case that this certificate was never received by the supreme court of the order. There is no question but that a new certificate was never issued.

It will be observed that under provision of the laws of the order above set out, there is no option left in the supreme body as to issuing a new benefit certificate. It is also clear in the case at bar, that standing upon its claim that Wintergerst never was a member of the order and never entitled to possession of the first certificate, even if this original certificate with the change in the beneficiaries indorsed upon it had been received by the supreme recorder, he would not have issued a new certificate. To have done that would have been a recognition of the membership of Wintergerst, which defendant has, in this action, consistently challenged.

The question then is presented as to whether these plaintiffs, the designated beneficiaries and within the class covered by the objects of the order, can, in this action, one at law, enforce their demand, absent the issue of a new certificate designating them as beneficiaries. Can they be here treated as the beneficiaries and entitled to recover, assuming for this branch of the case, that Wintergerst was himself a member of the order?

It is said by our court in Grand Lodge A. O. U. W. v. O'Malley, 114 Mo. App. 191, l. c. 201, 89 S. W. 68, that the designation of the beneficiary in a certificate

issued by a fraternal beneficiary association "is but a present expression of the member's will, revocable at any time, and unless there is to be found, either in the laws of the State where the association was incorporated or in its charter or by-laws or in the terms of the certificate itself, some provision prohibiting or restraining the right of the member to change the name of the beneficiary, he may do so with the same freedom as he may change the name of a legatee in his will by the making of a new will before the first one takes effect: provided, that where the rules and regulations of the association provide a specific method of changing the name of the beneficiary, such rules and regulations must be substantially complied with in order to effect a new designation." There was no new certificate issued. This decision in this case by our court was approved by the Supreme Court under the title of Grand Lodge A. O. U. W. v. McFadden, 213 Mo. 269, 111 S. W. 1172, the Supreme Court adopting the opinion of this court *verbatim* and *in extenso*. This defendant order has no rules prescribing the manner or restricting the right of change.

Practically the same case again came before our court in St. Louis Police Relief Assn. v. Tierney, 116 Mo. App. 447, 91 S. W. 968. In that case also no new certificate designating the party claiming the benefit was issued, notwithstanding which our court held that where the assured has acted in good conscience and without fault, a court of conscience will treat his act as an act testamentary and thus more clearly approximate the intention of the person whose bounty is involved.

It is said as against the application of the rule announced in these cases and others of like character to the case at bar, that they were actions in equity and that this principle can only be applied in actions at equity and cannot be applied in actions at law. We cannot agree to that proposition for two reasons. In the

first place, our Code abolishes the distinction in the forms of actions, although generally applying to each case the principle governing that class of cases to which it belongs; that is, abolishing the form, we still recognize a difference between the two forms of action. But that is far from saying that in actions at law, we do not apply equitable principles. Thus in an action for money had and received, an action at law, our courts have uniformly held that plaintiff can recover on the ground that in equity he is entitled to recover. The form is at law, the principle upon which the relief is granted is founded on equity. As see Clifford Banking Co. v. Donnovan Commission Co., 195 Mo. 262, l. c. 288, 94 S. W. 527.

That was done even by the English law courts, Lord MANSFIELD saying in Moses v. Macferlan, 2 Burr. 1005, that the action for money had and received lies "only for money had which, *ex aequo et bono*, the defendant ought to refund. . . . It lies for money paid by mistake; . . . or for money got through imposition (express, or implied); . . . or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances."

We applied that in Missouri Lincoln Trust Co. v. Third National Bank of St. Louis, 154 Mo. App. 89, l. c. 98, 133 S. W. 357, and in several other cases.

In National American Assn. v. Kirgin, 28 Mo. App. 80, it is true an interpleader and so a case in equity, it is held (1. c. 82) : "Although the laws of the organization do not prescribe the precise manner in which a member of a subordinate association shall proceed in order to surrender a certificate and have a new one issued changing the beneficiary, yet it sufficiently appears that a member of the order, who is a member of a subordinate association, receives his certificate, settles his dues, and surrenders his certificate through his subordinate association. . . . His right to make

the surrender and order the change is not questioned. It is provided, in express terms, by one of the laws of the order, that a 'member in good standing may surrender his benefit certificate and have a new one issued by paying a fee of fifty cents.' He made such a surrender to his association, paid the required fee, and the association made a record of it while he was yet alive. In doing this he did all that the laws of the order required to be done on his part in order to have a new certificate, changing the beneficiary. His right to make the change was absolute. . . . His power to make a change in the disposition of the fund being absolute, when he exercised this power as fully as he could exercise it under the laws of the organization, the contingent right of his wife to the fund in the event of his death attached, and the fact that the certificate was issued after his death is immaterial, since the certificate is not the right itself, but merely the evidence of the right.''

The facts here in evidence are very similar to those in this Kirgin case, and if it is true that Wintergerst did all that he could to change the beneficiaries and constitute these plaintiffs the beneficiaries, then their right attached and the fact that the original certificate evidencing this was lost in transmittal, if that is true, and that no new certificate has been issued to the beneficiary, even assuming that one would have been issued cannot defeat their right.

We are not without authority from text-writers and from the decisions of other States where codes have been adopted as in our State, to support the proposition that in this action, one at law, exactly as in the interpleader cases which have become actions in equity, this equitable right can be asserted and recovery had on it. Announcing the general rule that if a member does all in his power, that is, does all things required of him under the contract to effectuate a change, it will be held complete, although the new cer-

tificate has not in fact been issued, Mr. Bacon in his work on Benefit Societies (3 Ed.), vol. 1, sec. 309, cites many cases in which that is treated as done which should have been done and a recovery had as if the new certificate with the changed beneficiaries had in fact been issued. To the same effect is Niblack on the Law of Voluntary Societies, sec. 223.

In McGowan v. Supreme Court of Independent Order of Foresters, 104 Wis. 173, it was held that where the insured in one of these mutual benefit societies having done every substantial act required of him, dies before the new certificate is actually issued and only formal acts on the part of the association remain to be performed, the change will be considered to have been made even in an action at law. In that case it was urged that this could only be applied in cases of interpleader, in Wisconsin as in our States the proceeding under an interpleader being in equity. The Supreme Court of that State said (supra, l. c. 182): "The objection does not seem forcible. Either there was a change of beneficiaries or there was not. There is no middle course. Nor do we see how there could well be a change in equity and no change at law, or a change which would operate as to some parties and not to other parties to the transaction. Therefore we hold that the facts here shown prove a change of beneficiaries, even though the action be one at law."

We therefore hold in the case at bar, that if it appears from the evidence in the case that a change of the beneficiaries was indorsed upon the original certificate by Wintergerst and that he designated these plaintiffs as the beneficiaries, it being admitted that they are of the class of persons who fall within the benevolent intentions of the order, then even in this action, an action at law, plaintiffs can recover, provided Wintergerst was a member.

Sending blank proofs of loss to plaintiffs and putting them to the expense of filling them up, the blanks

having stamped upon them a notice to the effect that in furnishing them the company reserved all its rights under the contract and waived none of the conditions thereof, does not constitute an estoppel. [Loesch v. Union Casualty & Surety Co., 176 Mo. 654, 75 S. W. 621.]

Counsel for appellants ask us to reverse the judgment and remand the cause to the circuit court with directions to that court to enter up judgment for the plaintiffs. We cannot do that. We have stated the facts as in evidence. Whether they are to be accepted as true, is for the jury. It is for the trial court to declare the law on the facts as in evidence. It is that action which is subject to our review.

The judgment of the circuit court is accordingly reversed and the cause remanded with directions, if it is retried, to proceed in accordance with the rules of law herein indicated. *Nortoni* and *Allen, JJ.*, concur.

