# BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN v. GINTHER*

(No. 1271; August 31, 1926; 248 Pac. 852.)

(Rehearing Denied February 8, 1927—252 Pac. 1026.)

INSURANCE—CHANGE OF BENEFICIARY—DEATH OF BENEFICIARY RE-QUIRES DESIGNATION OF NEW BENEFICIARY—RULES OF BENEFIT SO-CIETY—FAILURE OF SOCIETY TO PERFORM MINISTERIAL ACT—CON-STITUTION OF SOCIETY GOVERNS—APPEAL AND ERROR.

1. Member's indorsement of desired change of beneficiary on benefit certificate in blank provided therefor and his ac-knowledgment before notary *held* sufficient to entitle new beneficiary to recover on certificate, though it was not sent to society for recording during life of member as required by society's constitution, in view of Comp. St. 1920, § 5329.

2. Where insured has right to change beneficiary without ap-proval of society, regulations effecting change should not be given construction imposing restrictions not clearly expressed.

3. Rights of beneficiary designated in accordance with socie-ty's constitution cannot be affected by failure of society to perform ministerial act of issuing new certificate.

4. Where original beneficiary was dead at time of attempted change, there was no change of beneficiary; rather the designation of a beneficiary not controlled by provisions of society's constitution effecting change of beneficiary.

5. Where insured has right to change beneficiary, beneficiary has no vested right to which any one succeeds on his death.

6. Permitting plaintiff, who pleaded change of beneficiary, to recover on theory that there was no change but merely a designation of a new beneficiary after death of the old *held* not improper where petition alleged facts showing "change" was made after death of original beneficiary.

7. Where it does not seem unreasonable or unjust, benefit society's constitution should be given same construction as it has received in other states.

ON PETITION FOR REHEARING

8. Constitution of fraternal benefit society in effect at member's death, and not subsequently adopted constitution, governs member's right to change beneficiaries, as against contention that stipulation that constitution should be admitted in evidence referred to subsequent constitution.

9. Provision of fraternal benefit society designated an ''interpretation'' of preceding provision respecting member's right to change beneficiary, presented for first time on petition for rehearing in Supreme Court, will not be considered.

10. Right of member of fraternal benefit society to change beneficiary under benefit certificate and constitution in force at time of his death *held* not abridged or enlarged by provision of constitution designated ''interpretation,'' reciting that ''responsibility for change of beneficiary is entirely with member in making request to general secretary and treasurer;'' meaning thereof not being clear.

*See Headnotes:    (1) 29 Cyc. p. 132 n. 47.    (2, 3) 29 Cyc. p. 130 n. 42; p. 131 n. 44.    (4) 29 Cyc. p. 130 n. 42.    (5) 29 Cyc. p. 155 n. 73.    (6) 29 Cyc. p. 228 n. 10.    (7) 29 Cyc. p. 69 n. 35; p. 130 n. 42. (8) 29 Cyc. p. 125 n. 15.    (9) 4 C J p. 642 n. 22.    (10) 29 Cyc. p. 125 n. 15.

ERROR to District Court, Albany County; VOLNEY J. TIDBALL, Judge.

Rehearing denied, 252 Pac. 1026.

Action by Blaine F. Ginther against the Brotherhood of Locomotive Firemen and Enginemen. There was judgment for plaintiff and defendant brings error.

*Sullivan* and *Garnett,* for plaintiff in error.

The insurance contract provided a method for changing the beneficiary; the attempted change was not completed before his death and was invalid; 1 A. L. R. 971; 29 Cyc. 130; Dean v. Dean, 156 N. W. 135; Stemler v. Stemler, 141 N. W. 780; Stoningham v. Dillon, 69 Pac. 1020; Supreme Council v. Smith, 17 Atl. 770. A mere intention to change is insufficient; insurer has the right to rely upon compliance with its rules; 1 Bacon L. & A. Ins. 404; Grand Lodge v. Edwards, 89 Atl. 147. The only exception to the

rule is where compliance is waived; Supreme Conclave v. Capella, 41 Fed. 1; Taylor v. Grand Lodge, 178 N. W. 130; Holden v. Brotherhood, 132 N. W. 329. This case is not within the exception; Modern Brotherhood v. Kovitch, 104 N. E. 795. Another exception is where insured has followed the rules but death occurred before issuance of certificate; Stemler v. Stemler, supra; Wilkes v. Hicks, 186 S. W. 830; 1 A. L. R. 971. The rules and by-laws of the society specifically provide the method to be followed in changing beneficiaries; in this case the insured executed the form but did not surrender it; he did not, therefore, comply with the contract; 1 Bacon L. & A. Ins. 404; Faubel v. Eckhart, 138 N. W. 618; Knights of Honor v. Nairn, 26 N. W. 829; Grand Lodge v. Edwards, supra; Olmstead v. Ins. Co., 14 Pac. 449; Jory v. Council, 38 Pac. 524.

*Arnold, Patterson* and *Arnold,* for defendant in error.

The insured did everything possible to effect a change of beneficiary and the failure to complete was beyond his power; Capella v. Capella, 41 Fed. 1. The contract should be liberally construed; 32 CJ. 1152. Cases cited by plaintiff in error involve controversies between rival claimants to the fund; principles of equity and common sense should be applied; 41 Fed. 4, 6. The fact that notice of a change of beneficiary did not reach the society until after the death of the insured does not affect the validity of the designation; Estes v. Local Union, (Mass.) 97 Atl. 326; Hirschl v. Clark, (Ia.) 47 N. W. 78; the validity of the certificate, death of first beneficiary, maturity of the obligation, right of insured to designate his brother are admitted facts and no pleas of payment being offered as defense, the association seeks to evade payment of a valid obligation; the following authorities are against the proposition: Heydorf v. Conrack, (Kan.) 52 Pac. 700; Marsh v. Council, (Mass.) 21 N. E. 1070; McGowan v. Foresters, (Wis.) 80 N. W. 603; Lahey v. Lahey (N. Y.) 66 N. E. 670; Waldum v. Homstad, (Wis.) 96 N. W. 806; Locket v. Locket, (Ky.) 80 S. W. 1152; Wooten v. Odd Fellows,

(N. C.) 96 S. E. 654; Dell v. Varnehoe, (Ga.) 95 S. E. 955; Henderson v. Woodmen, (Mo.) 146 S. W. 102. Rules of a beneficiary association will be construed against it where there is an attempt to work a forfeiture; Donnelly v. W. O. W., (Nebr.) 197 N. W. 125; Meyer v. Lodge, (Nebr.) 177 N. W. 828; 180 N. W. 579. We have here an original designation, in a change of beneficiary; Thomas v. Assn. (Ia.) 183 N. W. 629; Taylor v. Lodge, (N. D.) 178 N. W. 130; Shyrock v. Shyrock, (Nebr.) 70 N. W. 515; Hansen v. Assn., (Minn.) 60 N. W. 1091. Insured was prevented by fatal illness and death from forwarding the policy with the endorsement to the general Secretary and Treasurer of the society, all of which was established by the evidence.

KIMBALL, Justice.

The plaintiff, defendant in error herein, brought an action against the Brotherhood of Locomotive Firemen and Enginemen to recover upon the beneficiary certificate hereinafter referred to and sometimes called the "policy." Judgment was for the plaintiff and the defendant brings the case here on error. The parties will be referred to herein as in the court below.

The plaintiff in his petition alleged that the policy was issued October 30, 1918, upon the life of Garrett F. Ginther, for $1000, payable, in case of the death of the insured, to William Ginther, his father; that said father predeceased the insured and that on June 24, 1922, said insured "designated on the back of said insurance policy a change of beneficiary, and therein named this plaintiff, Blaine F. Ginther, brother of said insured, beneficiary under said policy of insurance; that the said Garrett F. Ginther died on June 28, 1922." The defendant answered, admitting the issuance of the policy, but pleaded that the regulations of the defendant with respect to the change of beneficiary, had not been complied with. This was denied in a reply and plaintiff further pleaded that the said in-

sured, immediately after the execution of the change of
beneficiary by filling out the printed form on the back of
the beneficiary certificate, was stricken with mortal ill-
ness, and incapacitated thereby from performing any
other act in relation to the said policy of insurance, and
while so incapacitated, died from his mortal illness four
days thereafter. The policy provides that in the event of
the death of said insured:

"William Ginther, father, related to him (insured), is
hereby designated as his (insured's) beneficiary, and if
the aforesaid member shall not have made a later designa-
tion of beneficiary, as may be provided in said constitu-
tion, the beneficiary named herein shall be entitled to re-
ceive, from the beneficiary fund of the said brotherhood,
the sum of One Thousand Dollars, provided that the ben-
eficiary designated herein shall not acquire any legal,
equitable or fixed right or interest in and to the proceeds
of this certificate which would prevent any change of ben-
eficiary herein in the manner provided in said constitu-
tion * * *. This certificate is issued upon the express
conditions that the constitution of the said brotherhood
* * * is and shall be a part of this contract in the same
manner and to the same extent as if said constitution * * *
were written herein. Should the beneficiary named herein
die before said member, or should there be a failure of a
proper designation of beneficiary, then in all such cases
the amount due upon the certificate shall be paid to the
person or persons who may be entitled thereto in the
order prescribed in the constitution of said brotherhood."

Printed on the back of the benefit certificate are the
following instructions:

"To change beneficiary, write the name of the new
beneficiary, and relationship of such beneficiary following
the name, in the following blank form, designating same
amount as on face of this certificate."

"Make acknowledgment of change of beneficiary before a notary public, or other officer authorized by law to take acknowledgments, and be sure that he impresses his official seal where indicated."

"Do not fill this blank form until change is desired."

Then follows the blank for use in making change of beneficiary. This was filled in, signed and acknowledged by the insured on June 24, 1922, and, omitting the acknowledgment, is as follows:

"Change of Beneficiary or Class of Certificate.

"I hereby certify that I am now a member of Lodge No. 86 of the Brotherhood of Locomotive Firemen and Enginemen, the same person to whom was issued the within beneficiary certificate. I hereby direct the cancellation of the certificate, and that assessments shall cease upon same, and that the proceeds arising therefrom shall no longer be payable as therein stated. I hereby direct that, in lieu of this certificate, a new certificate be issued to me for the sum of One Thousand Dollars, and in the event of my death while said new certificate is in force and effect, I hereby direct that the benefits arising therefrom be payable to Blaine F. Ginther, related to me as brother.

(signed) Garrett F. Ginther."

The following parts of the constitution of said brotherhood, relating to the designation and change of beneficiary, were introduced in evidence, namely:

"Article 8, Section 1 (c). A member may designate as his beneficiary or beneficiaries, one or more persons of the following class and no other. Viz.; wife, child or children, mother, father, sisters, brothers, blood relations, or persons depending upon him for support. And in the event that a member has no wife or child living, he may then designate as his beneficiary a charitable institution."

"Change of Beneficiary.

"Section 10 (a). A member desiring to change his beneficiary, shall make such change in writing on the form printed on the back of the beneficiary certificate, and such change can be made without the consent of the beneficiary. Said certificate must be forwarded to the general secretary and treasurer.

"(b). Beneficiaries shall not have, nor shall they require, a legal, equitable or fixed interest in or to said certificate or the proceeds thereof, so as to prevent any member from changing his beneficiary.

"(c). The member's signature thereto shall be acknowledged before a notary public or other officer authorized by law to take acknowledgments * * *.

"(d). A change or transfer of beneficiary shall not be valid or have any binding effect until said certificate has been received by the general secretary and treasurer, and by him cancelled, and a new certificate issued wherein a new designation of beneficiary shall appear. * * *."

It appears from the evidence that the insured became sick with tuberculosis in the month of March, 1922, but was able to be up and around most of the time until June 24, 1922. On the last mentioned date he went before a notary public and signed and acknowledged the change of beneficiary on the back of the benefit certificate. The time of day when this was done does not appear. The notary testified that insured appeared sick at that time. Some time before midnight of the same day, the insured was taken violently ill, at the home of plaintiff with whom the insured was living. A physician was called and some morphine was given the insured at that time. He was removed to the hospital the next morning, where he remained until the date of his death, on June 28, 1922. The immediate cause of his death was cerebro meningitis. He was under the influence of morphine from the night of June 24 until his death. It does not appear what became

of the benefit certificate from the time that he signed and acknowledged the change of beneficiary, as aforesaid. But it, together with proof of death, was sent in to the society by the plaintiff soon after insured's death. It was admitted that the original beneficiary in said benefit certificate predeceased the insured by a number of years; that the mother of the insured was dead, and that he was unmarried and had no children.

Our laws applicable to fraternal benefit societies provide that within certain restrictions, which do not affect the plaintiff in this case, "each member shall have the right to designate his beneficiary, and, from time to time, have the same changed in accordance with the laws, rules and regulations of the society, and no beneficiary shall have or obtain any vested interest in said benefit until the same has become due and payable upon the death of said member." Wyo. C. S. 1920, Sec. 5329. We understand that this provision is a part of a Uniform Fraternal Benefit Law that has been adopted in nearly forty states. Bacon on Life & Acc. Ins. (4th ed.) Sec. 10, note 20 and Sec. 20, note 46. It is a part the laws of Ohio and Illinois, the only states where we have found decisions construing the pertinent provisions of the constitution of the defendant. Ohio Gen. Code, Sec. 9467; Ill. Rev. Stat. (1923) ch. 73, Sec. 488.

The quoted language of our statute may be accepted as a statement of the general policy of the defendant, as shown by its constitution, with reference to designation and change of beneficiary. We need not pause to inquire whether the statute would control if the constitution of the defendant were opposed to it. The policy is to permit the member to name the beneficiary, so long as he chooses a qualified person and follows the regulations as to the manner of making the designation or change. The society reserves no right of veto. The regulations are merely as to the manner of making the change, and to provide

for notice thereof to the society so that the fact may be made a matter of record.

The plaintiff's petition was drawn on the theory that his designation as beneficiary constituted a "change of beneficiary," and the defense interposed by the society was that the change had not been made in the manner provided by the above-quoted provisions of its constitution. There may be some doubt whether the naming of a new beneficiary after the original beneficiary has died would be a "change of beneficiary" within the meaning of the regulations of defendant's constitution. That question will be discussed later. For the present we shall concede that to make the plaintiff the legal beneficiary the insured was required to follow the regulations in regard to a change of beneficiary.

The constitution of defendant (Sec. 10a, 10c) provides that the member desiring to change "his" beneficiary shall "make such change" on the form printed on the back of the certificate, acknowledging his signature before a notary public. This is the regulation as to the manner of making the change. It is conceded that the insured made the change in the manner prescribed. This was all that was required by the regulations to be done *by the insured or in his lifetime.* By printed instructions on the back of the benefit certificate the insured was told how to make a change of beneficiary. He was told thereby that the change was made by filling in, signing and acknowledging the blank provided for that purpose. The instrument, when so executed, contained the direction to cancel the certificate and issue a new one. The insured was warned: "Do not fill this blank form until change is desired." The instructions contained nothing to indicate that the certificate, when the change of beneficiary was endorsed thereon, should be forwarded to the society by the insured or within any particular time. We do not say that these instructions on the back of the certificate could have the effect of changing a provision of the de-

fendant's constitution.  We do think, however, that they may be considered as an interpretation of the constitution by the officers of the company who prepared and approved the form of the certificate.  They evidently thought that they were instructing the insured as to everything required to be done by him to change the beneficiary.

The other regulations are for the purpose of giving notice to the society in order that the change may be made a matter of record.  In view of the general policy of permitting the insured to name his beneficiary without obtaining the approval of the society, the regulations for the purpose of providing notice of the change to the society, and for the cancellation of the old and issuance of the new certificate, should not, we think, be given a construction that would limit the member's right of appointment by any restrictions not clearly expressed.  By the last sentence of Section 10 (a) it was required that the certificate be forwarded to the general secretary and treasurer.  It was not required that this be done by the insured, or in his lifetime.  It was further provided (Sec. 10d) that the change should not be valid or have any binding effect until the old certificate was received and cancelled and a new certificate issued wherein the new designation of beneficiary should appear.  It was not required that these acts be done in the lifetime of the insured, and as they involved no consent or approval on the part of the officers of the society, they were purely ministerial.  If the plaintiff was designated as beneficiary in accordance with the defendants constitution, his right to recover cannot be affected by the failure of defendant to perform the ministerial act of issuing the new certificate. Supreme Conclave v. Capella, 41 Fed. 1, 6; Arnold v. Newcomb, 104 O. St. 578, 136 N. E. 206.

In the Ohio case just cited the court considered the very provisions of the constitution of the defendant that we have to consider in the case at bar.  In that case the

member, desiring to make a change of beneficiary, filled in and executed the blank on the back of the certificate, but the certificate was not sent to the society until after the death of the insured when, as in the case at bar, it accompanied the proofs of death. The insured in that case delivered the certicate to the newly designated beneficiary who retained possession of it until after the death of the insured. The delivery of the certificate to the beneficiary might be entitled to be considered on the question of the insured's intention, but it was in no respect a compliance with the regulations in regard to changing the beneficiary, and, in our opinion, does not serve to distinguish that case from ours so far as concerns the question of complying with the rules of the society. The Supreme Court of Ohio held that a change of beneficiary was effected. They emphasized the point that the regulations contained in defendant's constitution did not require that the certificate be sent in, cancelled and new certificate issued "during the lifetime" of the insured, and held that the insured, by doing everything required to be done in his lifetime had substantially complied with the regulations.

Arnold v. Newcomb, just discussed, and an Illinois case presently to be mentioned, are the only cases we have been able to find that have considered the meaning of the pertinent provisions of this defendant's constitution. It is desirable that the by-laws or constittuion of a society like the defendant should receive a uniform interpretation so that the rights of members, beneficiaries and the society in different jurisdictions will be the same. Such uniformity of interpretation may sometimes be attained by looking to the laws and decisions of courts of the state where the society is incorporated. Royal Arcanum v. Green, 237 U. S. 531, 542, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916 A, 771; Modern Woodmen v. Myers, 99 O. St. 87; 124 N. E. 48; Royal Arcanum v. Brashears, 89 Md. 624, 631; 43 a. 866; Larkin v. Knights of Columbus, 188 Mass. 22, 73

N. E. 850. There is nothing in the record to show in what state the defendant is incorporated. There are facts to show that its home or general offices are in Cleveland, Ohio, where the policy was issued, and, in the absence of anything to show the contrary, we might be justified in assuming that the defendant is organized under the laws of that state. If that assumption be not warranted, we would still feel inclined to give great consideration to the opinion of the Ohio Supreme Court as to the meaning of the defendant's constitution, and, for the purpose of uniformity, to follow that opinion which does not seem to us to be unjust or erroneous.

It may be argued that Arnold v. Newcomb, supra, should be distinguished because in that case the money was brought into court and other claimants interpleaded, and the action thus became an equitable one, in which equitable principles could be applied, while the present action is one at law to be controlled by strict legal principles. This may be answered by quoting the words of Winslow, J., in McGowan v. Supreme Court, etc., 104 Wis. 173, 80 N. W. 603:

"The objection does not seem forcible. Either there was a change of beneficiaries or there was not. There is no middle course. Nor do we see how there could well be a change in equity and no change at law, or a change which should operate as to some parties and not to other parties to the transaction. Therefore we hold that the facts here shown prove a change of beneficiaries, even though the action be one at law."

The same conclusion was reached, and the point fully discussed, in Wintergerst v. Court of Honor, 185 Mo. App. 373, 170 S. W. 346.

Between the case of Arnold v. Newcomb, supra, and the case at bar there is another difference which, however, if material, does not help the defendant. In that case the

original beneficiaries were living when the insured changed the beneficiary and when he died. In the case at bar, when the insured named the plaintiff as his beneficiary, the original beneficiary was dead, and the contract of insurance was without any designated beneficiary.

The sections of defendant's constitution that seem to control this situation are Sec. 1 (c) and 1 (d). Section 1 (c) already quoted, provides generally that a member may designate as his beneficiary one or more persons of the classes there mentioned. There is nothing provided as to the manner of making the designation. Section 1 (c) is followed by Sec. 1 (d) which provides that "should there be no legally designated beneficiary, then the fund shall be paid, subject to provisions of this constitution bearing thereon, as follows, in the order named: First: to the widow, Second: to the child or children, Third: to the mother, Fourth: to the father, Fifth: to the sisters and brothers equally." There is some doubt whether this was introduced in evidence at the trial, but for the purposes of our decision we shall grant, as defendant contends, that it was.

The original beneficiary had no vested right, but only a mere expectancy. When he died no one succeeded to any rights under him, and the contract was without a "legally designated beneficiary." Had this condition continued until the death of the insured, the persons mentioned in Sec. 1 (d) would have been entitled to the fund, not because they had been "designated," but because the original designation had become ineffective on the death of the beneficiary and there had been no other designation. The situation would have been the same if there had never been a designation of beneficiary, and in such a case it would seem clear under the authorities that a beneficiary could have been designated without following the manner prescribed for "changing a beneficiary." Hanson v. Minnesota etc. Ass'n., 59 Minn. 123; 60 N. W. 1091; Shryock v. Shryock, 50 Nebr. 886; 70 N. W. 515; St. Louis

Police Relief Ass'n. v. Tierney, 116 Mo. App. 447, 91 S. W. 968.

In Cullen v. Knights of Maccabees, 77 Hun 6, 28 N. Y. S. 276, where the appointment of a beneficiary had been revoked, it was remarked that the certificate must be treated as if no designation had been made. We might say in our case that the original designation was revoked by the death of the beneficiary. If the contract should then be treated as if no designation had been made, the appointment of the plaintiff might well be considered a "designation," and not a "change" of beneficiary, and not controlled by the regulations relied upon by the defendant.

This view would seem contrary to many cases in which it has been held or assumed that in appointing a new beneficiary after the death of the former beneficiary, the regulations in regard to change of beneficiary must be followed. In many of those cases the point seems not to have been raised. Others may be distinguished on the ground that the by-laws or constitution in question showed clearly that any new designation should be made in the same manner as a change. Some of the cases cannot be distinguished on this point from the case at bar, and we might feel disposed to follow them if it were not for the case of Quest v. Brotherhood of Locomotive Firemen & Enginemen, 230 Ill. App. 321, an action against this society, where, on consideration of these same regulations, the conclusion of the court is stated as follows:

"The provisions of the constitution and by-laws of appellant relied upon in this case have no application to the naming of a new beneficiary in place of one who has died during the lifetime of the insured, but only applies where the insured desires to change the name of a living beneficiary."

It is stated in the report of this case that the opinion has become final on denial of certiorari by the Supreme

Court. So, in Illinois, the defendant's constitution permits the member, in a case like ours, to designate a new beneficiary without complying with the regulations in regard to change of beneficiary.

It is argued that to apply the rule of the Quest case would permit the plaintiff to recover on a theory different from that on which the case was brought and tried. It is true that the petition alleged that there was a change of beneficiary, but the facts were alleged, and we think if those facts warranted a finding that the appointment of plaintiff was a designation and not a change, the plaintiff might have been permitted to recover on that theory. The point was not overlooked by plaintiff at the trial, for, in objecting to the introduction of Section 10 of defendant's constitution, the plaintiff insisted that the provisions of that section did not limit the right of a member to appoint a new beneficiary after the other beneficiary had died.

Under the case of Arnold v. Newcomb, supra, the trial court was justified in holding that the plaintiff was the legally designated beneficiary, even granting that his designation was required to be made in conformity with the regulations in regard to a change of beneficiary. Under the case of Quest v. Brotherhood of Locomotive Firemen and Enginemen the trial court might have held that the designation of plaintiff as beneficiary was not a change of beneficiary within the meaning of the regulations relied upon by the defendant. These are the only cases construing these identical regulations and we are disposed to follow them. If cases to the contrary are to be found, they must have less influence, for we think we should, where it does not seem unjust or unreasonable, give to defendant's constitution the same meaning it has elsewhere.

The judgment of the district court will be affirmed.

*Affirmed.*

Potter, Ch. J., concurs. Blume, J., dissents.

DISSENTING OPINION

Blume, Justice.

The decision of the majority of the court in sustaining the judgment in the court below is partially based on the holding that the designation of the plaintiff as a later beneficiary of the policy sued on is not a "change of beneficiary" within the meaning of the provisions of the constitution of the brotherhood relating thereto; but that it is an original designation, and that hence the provisions relating to a change need not be complied with. I cannot concur in that opinion.

The benefit certificate provides: "Should the beneficiary named herein die before said member, or should there be a failure of proper designation of beneficiary, then in all such cases the amount due upon this certificate shall be paid to the person or persons who may be entitled thereto in the order prescribed in the constitution of said brotherhood." The plaintiff herein does not claim to recover under the latter clause, but because he is the "properly designated" beneficiary. There is not a syllable in the certificate indicating that the company will pay to any person except to William Ginther, the originally designated beneficiary or "to the person or persons who may be entitled thereto in the order prescribed in the constitution of said brotherhood." There is no provision whatever in the certificate that a later designated beneficiary, as the plaintiff here claims to be, shall be entitled to the money, unless that be implied; and it can be implied only, if at all, from the provisions relating to the "later designation of beneficiary," or those relating to a "change of beneficiary." Plaintiff cannot possibly be a "properly designated" beneficiary unless he comes within one or the other of these clauses, for his designation is at least a "later" designation. Now the benefit certificate contemplates, as shown by the provisions of it set out in the statement of facts, of the opinion of the majority, that the

"later designation" of a beneficiary, must be made *"as may be provided in said constitution."* Again the certificate contemplates "a change" of beneficiary, which shall be "in the manner provided in said constitution." Evidently the phrases "later designation of beneficiary" and "change of beneficiary" are used as synonymous. The constitution in evidence specifically provides for the manner of making such "change." We find no constitution in the record which provides for a "later designation" apart from a "change;" none has been shown, none is claimed and it would be unnatural to suppose that there is, or that there ever would be. And when the benefit certificate contemplates, as heretofore stated, that the "later designation" of beneficiary shall be "as may be provided in said constitution," it necessarily refers to that portion of the constitution which purports to provide for a "change" or the provision would be senseless. Hence the designation of plaintiff must be in accordance with the provision relating to "change of beneficiary." There is a blank on the back of the benefit certificate which provides for a "change of beneficiary." There is no blank providing for a "later designation of beneficiary." Unless the two clauses are synonymous, why this situation? Not only that, but the insured signed and acknowledged the blank actually found on the back of the certificate, thus himself recognizing that when the plaintiff was designated as a beneficiary, he was making a "change." And counsel for the plaintiff, just as naturally as myself, at once recognized that what the member did on June 24, 1922, was to "change" the beneficiary, for they plead in the petition in this case that—

"said insured, Garrett F. Ginther, designated on the back of said insurance policy a *change of beneficiary,* and therein named this plaintiff, Blaine F. Ginther, brother of said insured, beneficiary under said policy of insurance."

Again in the reply they deny "that the change of beneficiary by naming the plaintiff herein is invalid." Their present claim that the acts done constitute no change within the meaning of the constitution of said brotherhood is clearly an afterthought. And that afterthought, puts, it seems to me, an unnatural construction upon the meaning of the language in the benefit certificate, for which there is no room in this case. The point appears so clear, that, were it not for the opinion of my associates, whose judgment I value highly, I should have considered it beyond the pale of discussion.

None of the cases cited in the majority opinion have any bearing on the case at bar except Quest v. Brotherhood of Locomotive Firemen & Enginemen, 230 Ill. App. 321, in which the same constitution involved in the case at bar is discussed. Whether the benefit certificate in that case was the same as the benefit certificate in this case does not appear. At least no attention was paid to it. The case does not, as the majority assume, undertake particularly to construe the meaning of the regulations of the brotherhood. It simply follows what was by the court conceived to be the rule laid down in the case of Order of Forresters v. Malloy, 169 Ill. 58, and another case in the court of appeals. It appears in the Malloy case that certain by-laws provided for a change of beneficiary. In another provision it was stated that in the event of the death of the original beneficiary previous to the death of the member, if such member "shall have made no other or further disposition thereof," the benefit should be paid to certain persons enumerated. The court held that where the original beneficiary died, a new designation might be made by will, and that the provision for a change applied only to a case where the original beneficiary had not predeceased the member. The case is opposed to all the other authorities in the United States, and these are abundant.

The identical question under almost the identical by-laws arose in the case of Head v. Supreme Council etc., 64 Mo. App. 212. Section 163 of the bylaws provided for the proceeds of the insurance if the original beneficiary should predecease the member, and if the member "shall have made no further disposition thereof." Section 162 of the bylaws provided for the method to be pursued in case of "change of beneficiary." The court said:

"It is obvious that the method adopted by plaintiff and Ryan to effect a change of beneficiaries was in no respect in compliance with section 162 supra of the bylaws. No application was made to the branch lodge, and no notice was given to it or to defendant of the desired change. Council for plaintiff concedes this, but contends that section 162 applies only where a change is sought during the life of the beneficiary named in the certificate, and that where the beneficiary dies, the assured is in the same position as when he first applied for membership, and can without formality or restriction designate any other beneficiary. We do not think that the contract, when all its parts are considered, will admit of such construction. Section 162 furnishes an exclusive and universal method for a change of beneficiaries. Section 163, supra, provides no other, its only purpose being to prevent a lapse of the policy under certain contingencies. Provision is made in the section for the designation of a new beneficiary under the circumstances stated, but the necessary implication is that such designation or change must be made as provided by the bylaws of the order governing that subject."

In each of the following cases the beneficiary predeceased the member; in each the contract between the parties, including the bylaws or constitution, were similar to that in the case at bar. In each of them an attempt was made by the member, after the death of the original beneficiary to substitute a new beneficiary, the method pur-

sued being either by will or in some other manner.  The question in each case was as to whether or not in attempting to make such substitution, or change, the member was compelled to pursue the method pointed out in the bylaws for a change of beneficiary, and in each of the cases it was held that he must do so and that unless those provisions were substantially followed, the attempted substitution, or change, was void.  Hence, while the point here under discussion was not pressed upon the courts in these cases in the exact form as it is here raised, in substance the identical question was decided, and was decided adversely to the contention of the plaintiff herein.  Grand Lodge etc. v. Edwards, 111 Me. 359, 89 Atl. 147; Grand Lodge etc. v. Connelly, 58 N. J. Eq. 180, 43 Atl. 286; Grand Lodge etc. v. Ganby, 63 N. J. Eq. 692; 53 Atl. 142; Modern Woodmen of America v. Puckett, 77 Kan. 284, 94 Pac. 132; 17 L. R. A. N. S. 1083; Grant v. Faires, 253 Pa. 282, 97 Atl. 1060; Bollman v. Supreme Lodge etc., (Tex. Civ. App.) 53 S. W. 722; Hadley v. Modern Woodmen of America, (Mo. App.) 205 S. W. 101; Hull v. Brotherhood of Yeomen, 199 Iowa 356; 202 N. W. 6; Dean v. Dean, 162 Wisc. 303.  See also Hollenberg v. District No. 1 etc., 94 N. Y. 580; Moss v. Littleton, 6 App. D. C. 201.  In the Texas, Kansas and Iowa cases here cited, the substitution of a new beneficiary was attempted to be made by will, as in Order of Forresters v. Malloy, supra, and it was held that it could not be done in that manner, but that it must be done in the manner pointed out by the bylaws in case of a "change" of beneficiary.  The Iowa and Kansas cases both cite Daniels v. Pratt, 143 Mass. 216, 10 N. E. 166, which, too, is in point, although in that case it was provided that "no change of designation" should be made without the consent of the company.  In the Iowa case, where, as stated, the original beneficiary predeceased the member, the court said:

"The bylaws of the association provided specifically the method of changing beneficiaries, the provision being to

one frequently incorporated in the by-laws of insurance associations organized on the plan of appellee. No attempt was made by the member to change the beneficiary in the manner provided by the by-laws of the association, but he did attempt to dispose of the proceeds of the certificate by will. Section 161 of the by-laws of the association provides as follows: 'In the event of the death of a Beneficiary, or beneficiaries before the death of the member, *and the member shall have made no other disposition of the benefits,* that portion of the benefits, made payable to the deceased beneficiary or beneficiaries, shall be paid to the legal heirs of such deceased member.' The law is well settled in this state that, where the certificate provides a method for changing a beneficiary, that method is exclusive, and must be followed. * * * Nor ·may the insured, under such circumstances, designate or appoint another beneficiary by will.''

In the Maine case cited supra, the by-laws of the association provided that if the beneficiary should die in the lifetime of the member, and he had made no other legal designation, the benefit should be paid to certain designated persons. The by-laws provided for a certain method of change. The originally designated beneficiary predeceased the member, and it was claimed that a new or later designation had been made by letter. The court discusses the question as to whether or not the claimant under this letter was the ''legally designated'' beneficiary, and holds that he was not; that he could be designated only by a compliance with the by-laws providing for a change, saying, among other things:

''The authorities are almost uniform in holding that he who relies upon a change in the beneficiary contract, whereby a new beneficiary is designated to take the benefit in place of those who would otherwise be entitled to it under the unchanged contract, must show that the change

has been made in the manner provided for in the by-laws of the order.''

In Grand Lodge etc. v. Edwards, supra, the court points out that the by-laws there involved specify certain persons as the proper beneficiaries in case of the death of the original beneficiary, and in case no legal designation has otherwise been made. That is true also in the case at bar, for counsel for the plaintiff read into the record the provision of the constitution of the defendant that:

''Should there be no legally designated beneficiary, then the fund shall be paid, subject to the provisions of this constitution bearing thereon, as follows, in the order named: First to the widow, second to the child or children; third, to the mother; fourth, to the father; fifth, sisters and brothers equally.''

In any event, each and all of the cases already cited have treated and understood the phrase ''change of beneficiary'' to include a designation subsequent to the original one, whether at the time of such subsequent designation the original beneficiary was dead or alive. That is true also in the case of Finnell v. Franklin, 55 Colo. 156, 134 Pac. 122, and Rollins v. McHatton, 16 Colo. 203, 27 Pac. 254; 25 A. S. R. 260, although these cases may to some extent be distinguished from the case at bar. There can be no question that this has been the universal understanding of the phrase, and that the various constitutions and by-laws adopted by the various orders have been adopted in that light. The benefit certificate involved in this case, shows that to be the meaning; it was so understood by the decedent; it was so interpreted by counsel for plaintiff, and it does not, it seems to me, behoove this court to put any other construction upon it at this time. The holding that the regulations relating to change of beneficiary need not be complied with in a case like that

at bar, necessarily means that later beneficiaries in such case may be designated in any informal manner whatever, orally or otherwise—a method of change that most of the courts have steadily frowned upon, because it would lead to endless litigation and the setting up of all sorts of fictitious claims, and which may be avoided only by the defendant and other like organizations making an amendment to their regulations. See Faubel v. Eckhart, 151 Wisc. 155.

2.   The main holding of the majority, namely that the change was properly effected, by which I assume, in view of the reliance of the defendant relating thereto, were substantially complied with, is, in my judgment, even more fundamentally wrong, than the conclusion on the point heretofore discussed, and ignores substantially all the wealth of authorities on the subject. The constitution of the brotherhood involved in the case at bar, provides that if a member desires to make a change of beneficiary, he must execute and properly acknowledge the blank on the back of the policy providing for such change; that the policy must be sent to the general secretary, and, under another provision:

"A change or transfer of beneficiary shall not be valid or have any binding effect until said certificate has been received by the general secretary and treasurer, and by him cancelled, and a new certificate issued wherein a new designation of beneficiary shall appear."

If this means anything at all, it means that the execution and acknowledgment on the back of the certificate is not a change but simply an attempted change, which cannot become effectual until the further requirements are complied with. That was not done, and hence the attempted change is, under these provisions, necessarily invalid, and it is difficult to see how language can be made

plainer to state that result. The point will be again referred to later. The fact that the instruction on the back of the certificate did not point out these provisions, surely cannot be used as an argument that the member did not need to pay any attention to them, particularly in view of the fact that the regulations of the society are, in the certificate, specifically made a part of the contract. Further, it does not even appear herein that it was the intention of the decedent to complete the change. He executed, it is true, the blank on the back of the policy providing for a change. At what time of the day on June 24, 1922, this was done, does not appear. And while the evidence shows that he was sick at the time, he had been sick for at least two months previously during which he did nothing, and during which he had ample time to have caused the requirements of the brotherhood to be fully complied with. And no reason appears why, if he was able to execute the blank providing for a change, he could not also have sent it in to the company, or at least have caused it to be done. On the contrary, he kept the policy in his possession, as he had done during his two months of sickness; he did not deliver it to plaintiff or to anyone for him; and the purpose of keeping it can only be conjectured. And the burden to show the change was on plaintiff. In the case of Stemler v. Stemler, 31 S. D. 595, 141 N. W. 780, the court, in speaking of the effect of what the decedent did in the case at bar, said:

"The bare execution and acknowledgment of such a surrender clause and request for a change of beneficiary would certainly be ineffectual for any purpose if no delivery or other steps were taken towards carrying the said execution thereof into effect. Such an insured might, we apprehend, duly sign and acknowledge such a surrender clause and still retain the same for years in his possession and control, without any effort or attempt to deliver the same or carry the same into effect, and his death occur

with the same still in his possession and under his control undelivered, and under such circumstances alone it could not be successfully contended that there had been a change of beneficiary.''

The rights of the plaintiff herein, if any, arise out of the contract entered into between the decedent and the brotherhood. That is the source and the measure of his rights, unless, perchance a court of equity feels impelled to step in. Modern Woodmen of America v. Headle, 88 Vt. 37, 90 Atl. 893, L. R. A. 1915A 580; The Supreme Lodge etc. v. Nairn, 60 Mich. 44; Finnell v. Franklin, 55 Colo. 156, 134 Pac. 122; Van Bibber v. Van Bibber, 82 Ky. 350; Niblack Ben. Sec. & Acc. Ins., sec. 222 a. The brotherhood is here standing upon its contract, and insists that the plaintiff is not, under the showing made in this case, entitled to the money under the policy, as the sole beneficiary, though it is admitted in the briefs of counsel for the brotherhood that the money due thereunder is due to the brothers and sisters of the decedent, whoever they may be. The right to stand upon his contract, is granted to the humblest citizen of our land; the same right is granted to every ordinary corporation, and it would be strange indeed, if fraternal or charitable organizations, such as the brotherhood in the case at bar, whose existence is for the benefit of its numerous members alone, would be compelled to waive their rights, and should not be entitled to insist upon the fulfillment of the terms of their contracts, at least in so far as these protect them against expensive litigation and against double liability. Not to grant them such right would endanger their very foundation and make their existence precarious. But courts do grant that right, and I know of no exception where that has not been done, except in the decision of this case. In fact some of the courts have regarded the contract of so much importance, that they have refused to consider any infringement thereon through equitable considerations in

cases where the provisions for a change regulated the time as to when such change should become effective, and where the acts to be done by the member were not all done, except, perhaps, that the return of the old certificate will be dispensed with, where it is lost, or withheld by the beneficiary therein designated. Hughes v. Modern Woodmen of America, 124 Minn. 450; 145 N. W. 387; Myers v. Modern Woodmen etc., 205 Ill. App. 45; Kemner v. Modern Woodmen etc., 70 Kan. 119, 78 Pac. 452; Counsman v. Modern Woodmen etc., 69 Neb. 710, 96 N. W. 672; Modern Woodmen etc. v. Headle, supra; See note Ann. Cas. 1914D 1133. Some of the courts hold to practically that rule even in the absence of a provision making time an important element of the change. Ancient Order of Gleaners v. Burg, 165 Mich. 1, 130 N. W. 191, 34 L. R. A. N. S. 277; Grand Lodge etc. v. Martin, (Me.) 108 Atl. 355; Orcutt v. Modern Woodman etc., 213 App. Div. 530; Knighs of Maccabees v. Sackett, 34 Mont. 357; Freund v. Freund, 218 Ill. 189, 75 N. E. 925, 109 A. S. 283; Page v. Bell, 146 Ga. 680, 92 S. E. 54; cases in Note Ann. Cas. 1914D 1129-1132. And it is a general rule that the mode of change agreed upon is a matter of substance, and must at least be substantially complied with. Note 19 A. S. R. 790; Note 5 L. R. A. 96, 14 R. C. L. 1390, 1391; Note Ann. Cas. 1914D 1129, 29 Cyc. 130; Niblack, supra, sec. 218; 4 Cooley, Briefs on Insurance, 3767; Bacon, Life & Acc. Ins., sec. 404. Thus it is said in the case of Fink v. Fink, 171 N. Y. 616, 64 N. E. 506:

"The change of the beneficiary is an important matter, for it transfers the right to receive the death benefit, amounting in this case to $1,000, from one person to another. The right of the member to make the change is absolute, and the beneficiary can neither prevent it by objecting, or promote it by consenting. Obviously such a transaction requires some formalities for the protection of the company, the member and the beneficiary. The for-

malities required by the association were very simple, but unless they were substantially complied with, the change could not be made. Mere intention to make the change is not enough, for the acts prescribed to carry the intention into effect are forms imposed upon the execution of a power, and they must be observed or the change cannot be effected.''

And in contrast with the easy way in which the majority opinion brushes aside the requirements subsequent to the execution of the blank on the back of the policy, the Supreme Court of Colorado in the case of Rollins v. McHatton, 16 Colo. 203; 27 Pac. 254, 85 A. S. R. 260, said:

''It is doubtless a matter of importance to such societies that their books show all changes in this respect. But it is more important to the assured that some record of the kind be kept in order that his wishes in the premises may not, after his death, be defeated. And obviously the beneficiary is profoundly interested in having such definite and reliable evidence of his ownership. It would be a *dangerous precedent* were we to hold that the designation of the change of beneficiary by entry upon the books of the company is not imperative. Disregard of the prescribed mode of substitution would tend to frustrate the wise and benevolent object to which these societies owe their existence.'' (Italics are mine.)

The only exceptions that have been recognized are usually stated as three: (1) Where the society has waived compliance with its own rules and has issued a new policy to the member during his lifetime. (2) If it is beyond the power of the insured to comply literally with the regulations. (3) If the insured has pursued the course pointed out by the laws of the association, and has done all that is required of him to be done, but before the new certificate is actually issued, he dies. In the last two cases, a court of

equity may consider that done which ought to have been done. As already pointed out, some of the courts will not deviate from the contract if the time of change is important under the rules of the association, except, perhaps, as heretofore stated; and, in other cases, the exceptions here stated do not appear to be fully recognized. Thus it is said in Orcutt v. Modern Woodmen etc., supra:

"It is urged by the appellant that if the insured has done all in his power to change the beneficiary, but before the new certificate is actually issued, he dies, a court of equity will treat such certificate as having been issued. * * * But this conclusion can only be sustained when the member has complied with the requirements imposed in the by-laws on his part to be performed."

The burden is upon the new beneficiary to show that the change has been made in the manner provided for in the contract, or that the case is one calling for equitable relief. Modern Woodmen etc. v. Headle, supra; Mosaic Templars v. Mills, (Ala.) 102 So. 538; Grand Lodge etc. v. Edwards, supra; Siglar v. Ivancho, 60 Pa. Super. Ct. 431. This is just, inasmuch as such beneficiary is, generally, in much better position to prove the facts, and particularly is he in better position to know as to whether there are any other parties who have a better claim to the benefit.

Counsel for the defendant seem to take the position that this is an action at law, the defendant being the only party, and any other possible claimants not having been brought into court. They seem, accordingly, to claim that for that reason, if no other, principles of equity cannot be applied here at all. It need not be determined whether that is true or not. The contrary had been decided in McGowan v. The Supreme Court etc., 104 Wisc. 173, 80 N. W. 603; and Wintergest v. Court of Honor, 185 Mo. App. 373; 170 S. W. 346. I shall have occasion to refer to these cases later. Certain it is that equitable rules

are not nearly so readily applied in a case where the company resists the claim, or where all the parties that might have a claim upon the benefit are not brought into court. Thus it is said in the case of Conway v. Supreme Council etc., 131 Cal. 437:

"It has uniformly been held in organizations such as this that the by-laws form a part of the contract, and that the association may require a compliance with them, or refuse to pay. * * * In this instance there was no substantial compliance with the requirements of the by-laws, and it must, therefore, be held that were these sureties merely seeking to enforce their demand against the order, the latter would be justified in its refusal to pay. But the actual situation presented here is somewhat different. All the parties interested are before the court, and equity may be done."

So in the case of Dell v. Varnedoe, 148 Ga. 91, 95 S. E. 977, where the member complied with the regulations just about to the same extent as in the case at bar, the court said:

"As against the association, it must be held that the attempt by the insured to change the beneficiary was ineffectual. * * * The association (however) has no interest in the controversy. * * * In the well considered opinion in Nally v. Nally, 74 Ga. 669, 58 A. R. 458, by Hall J., based upon principle rather than upon precedent, where the association stood indifferently between the parties as in this case, this court applied the doctrine of equitable relief as between the claimants to the fund, considering that as done by the insured member which ought to be done."

In the case of Modern Brotherhood v. Matkovitch, 56 Ind. App. 8, the court said:

"The same strictness is not observed where the controversy is between the different claimants, as is observed where the company is denying that a person claiming the fund is the beneficiary. Where the company acknowledges liability and seeks only to be protected from complications in making payment, there are many cases where incomplete changes have been held sufficient by the application of equitable principles."

And in Downing v. Downing, 82 Pa. Super. Ct., 220, the court said:

"It is within the power of the member to change the beneficiary whenever he chooses to do so, subject, however, to the qualification that such right must be exercised strictly in accord with the by-laws of the association, otherwise the latter is not bound to recognize the new beneficiary."

These cases come very near holding that the company is entitled to insist upon full and complete compliance with its regulations, and that in no case, except, perhaps, where only a ministerial act remains to be done by the company, will equity be applied where it so insists. And in fact in no case (not considering the Illinois cases mentioned in the first part of this opinion) has the claimant succeeded, where the facts were anything like the facts in the case at bar, and where the association alone was defendant or resisted the claim. In each and all of them he was defeated. Colemen v. Knights of Honor, 18 Mo. App. 189; Head v. Supreme Council, 64 Mo. App. 212; Gray v. W. O. W., 47 Tex. Civ. App. 609; Sovereign Camp W. O. W. v. Israel, 117 Ark. 121; Kempner v. Modern Woodmen etc., supra; Clark v. Supreme Council, 176 Mass. 468; Landry v. Sovereign Camp, 140 Mo. App. 45; National Mutual Aid Soc. v. Lupold, 101 Pa. St. 111: See Hellenberg v. District No. 1 etc., 94 N. Y. 580. And in most, if not all of the cases

where the equitable exceptions heretofore stated were applied, the decision is partially based on the fact that the association waived compliance with the regulations. See cases in note 34 L. R. A. N. S. 277; in note L. R. A. 1915A 580, and in note 2 L. R. A. 1683. While, in some of the cases the point is not mentioned, because evidently not deemed necessary, most of·them specifically refer to the waiver on the part of the association, and the cases would evidently have been differently decided, had no such waiver existed.

It may, perhaps, be that equitable principles should be applied in this case, if all the possible claimants to the fund in question were before the court, or if it should clearly appear in some other wày that the company is fully protected by reason of the non-existence of other claimants, or by reason of other facts. Without determining it, this might possibly be so held under the decision in Smiley v. Modern Woodmen etc., (Neb.) 198 N. W. 157; Taylor v. Grand Lodge etc., (N. D.) 178 N. W. 130; Dell v. Varnedoe, supra, and a few other cases, because, as stated in the Nebraska case, the company should not, if fully protected, arbitrarily insist upon full compliance with its regulations. But equity surely should never be applied if to do so may result in injustice to one of the parties to the case. And how may it be applied in this case, where it is not shown that there are no other claimants, or that the company would be fully protected, and that it does not run the risk of double liability? And it must be borne in mind that prima facie the contract must be complied with and that the burden to show that equity may be invoked is on the plaintiff. The latter knows whether he has brothers and sisters who might be entitled to part of the money involved herein. For some reason he did not see fit to show the facts. The action for the fund here in question is an action on a contract. It is a transitory action which may be brought in any state where ser-

vice may be had on the brotherhood. Austin v. Royal League, 316 Ill. 188, 147 N. E. 106. The determination of the action in this state is not at all binding upon the courts of any other state, and the defendant herein might be subjected to another action or several other actions, as actually happened in the case of the fund discussed in the case of Kempner v. Modern Woodmen, supra. There is no principle of law which would compel the company to deposit the money into court, and waive its rights to be protected under its contract; and if we should go so far as to compel it to do so, and thus attempt to shake the basic foundation of our present day civilization, the company might not then be protected, since, as stated, it might again be subjected to suit and judgment in another state. This is of peculiar and vital importance, because of the fact that the courts generally hold that any person interested in the proceeds of the policy has the right to insist upon the provisions of the contract, and that while the association may waive them so far as it itself is concerned, it cannot waive them, after the death of the member, so far as other parties are concerned. And if a brother or sister of the plaintiff herein should, for instance, happen to live in one of our neighboring states of Colorado, Idaho or Montana, and sue the defendant upon the policy in question, it seems reasonably clear, from the decisions in these states, that he or she would recover, notwithstanding the decision in this case. See Rollins v. McHatton, 16 Colo. 203; Knights of Maccabees v. Sackett, 34 Mont. 357; Allison v. Brotherhood of American Trainmen, (Idaho) 201 Pac. 838.

The decision by the majority of this court holds, as heretofore stated, that the requirements for a change were substantially complied with. Now the rule of substantial performance, at least the kind under consideration here, is fundamentally a rule of equity which considers that done which ought to be considered as done. See Denton v.

Atchison, 34 Kan. 438, 441. Hence that rule does not differ materially from the equitable rules heretofore referred to, and is but another way of stating them. The opinion of the majority cites, in support of its conclusion, the case of Arnold v. Newcomb, 104 O. S. 578; 136 N. E. 206, where it was said that the decedent had substantially complied with the regulations of the brotherhood. But that case is radically different from the case at bar. The parties in that case who were interested in the proceeds of the policy were all before the court; the association interpleaded and deposited the money; it was fully and completely protected and was not exposed to the danger of any other suit. Futher, the original certificate was returned, though not in the lifetime of decedent, and was actually cancelled, and the court considers this of importance in applying its rule of substantial performance. That was not done in this case. And above all, there was no question as to what was the intent of the member in the Ohio case during his lifetime. He delivered the certificate, after he had executed the blank on the back of the policy, to his wife, the new beneficiary, and ratified the change, as the court holds, by continuing to pay dues thereon. If, as the opinion of the majority in the case at bar states, the court did not consider the member's intention of any importance in arriving at its conclusion, why, in any event, was it necessary to discuss the point of ratification? That fact conclusively shows the contrary. Surely that case presents an entirely different situation from the case at bar. The criticism of the statement heretofore quoted from Stemler v. Stemler, supra, does not apply to it, and the danger of successful suits in other states would not, under such state of facts, be near so great as under facts like those in the case at bar, even though the interested parties should not all be before the court, which they were in that case. Further, the contract and constitution in question in this case and in the Ohio case, makes, as here-

tofore stated, any attempted change invalid and of no binding effect until the certificate has been returned to the general secretary and cancelled and a new certificate, showing the new beneficiary, has been issued. Is it even conceivable—thinkable—that these provisions contemplate the issuance of a new certificate after the death of the member? If not, and palpably not—if that is beyond all reason, and it plainly is—then we must necessarily come to the unerring, unalterable conclusion, that the provisions contemplate that the old certificate must be returned to the general secretary during the member's lifetime either by himself or by someone else for him, and this was not done. In view of this plain, unescapable fact, the holding in the Ohio case must be interpreted to be merely to the effect that, all the interested parties being in court, and the brotherhood waiving its rights, the change of beneficiary should, in view of the facts, be allowed in equity—in other words, that the contract should, by reason of the equities as between the contending parties, be considered as substantially complied with. The principles announced in that case can certainly not be accepted as safe any further than that, if they were intended to go further, and there is no reason to believe that to be so. Even interpreted as just stated, the case is squarely opposed to many other cases, for instance the case of Bishop v. Roberts, 104 Kans. 181, 178 Pac. 408, where regulations substantially like those in the case at bar were considered, and the case of Dean v. Dean, 162 Wisc. 303. And it may not be amiss to mention in this connection that the record in this case disclosed that the defendant here changed its constitution within sixty days after the decision of the Ohio case, now specifically providing that the old certificate must be returned by the member himself in order to effectuate a change—perhaps hoping to avoid, for its protection, the extension of the principles laid down in that case to a case like that at bar. It has failed to do so, but it has made a

rather effectual answer to the argument, made in the opinion of the majority, that we should, for the purpose of uniformity put the same construction on the regulations in question as was done in the Ohio case; for forsooth, the decision in that case does not, after the change that was made in the regulations, any longer apply even under facts like those that appeared in that case. And it may be said, further, that while uniformity of decisions is, of course, highly desirable, it is more desirable that we should avoid an attempted uniformity that leads to bad results.

The opinion of the majority also relies on an isolated statement in the case of McGowan v. The Supreme Court etc., 104 Wisc. 173, 80 N. W. 603. In that case the by-laws of the association had been complied with in substantially every respect except that no new certificate was issued, which was in no way due to the fault of the member, and the court applied equitable principles, holding that the new beneficiary was entitled to the money. It was said in the course of the opinion that a change is either valid or not; if it is valid, it must be so as to all the parties to a contract, and that the validity does not depend on whether there is an interpleader in the case or not. The gist of the statements, as interpreted in the light of the facts in the case, probably is nothing more than that a court will apply equitable principles even in an action at law. That is the interpretation placed thereon in the case of Wintergest v. Court of Honor, 185 Mo. App. 373, 170 S. W. 346. And if such principles are applied only, and no change is recognized except when the association is fully protected along with all other parties interested in the contract, I am not prepared to say that any fault can be found with the doctrine, although, as heretofore shown, other courts at least apply equitable doctrines more readily when the association is not contesting. And it appears that the Wisconsin court is rather strict in its requirements that the by-laws of an associa-

tion, such as the defendant in this case, must be com-
plied with. It is very apparent, especially from the later
case of Dean v. Dean, 162 Wisc. 303, already heretofore
cited, where the decedent did just about what the dece-
dent did in the case at bar, that the views of that court
are diametrically opposed to the conclusion arrived at by
the majority of this court. And the Missouri rule is evi-
dently the same as that in Wisconsin: Landry v. Sover-
eign Camp, 140 Mo. App. 45, 124 S. W. 530, and the Win-
tergest case, supra. The basis for the application of
equitable principles in the case at bar—among other
things, the protection necessary for, the association—is
absent in this case, and when that is true, no court is war-
ranted in applying equitable principles or the doctrine of
substantial performance. The statement above mentioned
in the Wisconsin case, cannot be engrafted, as it were,
onto the Ohio case, as interpreted by the majority, and
in which there was an interpleader, and then in that form
use this case, as the majority has plainly done, as a stand-
ard by which to gauge other cases. This seems too plain
for argument. For in a case of an interpleader, that is to
say, when the association deposits the money into court,
it waives its rights; it has none left; none will be consid-
ered. Hence, if the contract in the case at bar is to be con-
strued the same as in a case in which there is an inter-
pleader, it necessarily means that the contract will be
construed without reference to the rights of the associa-
tion, no matter what it may claim and no matter of what
these rights may consist. And that cannot be good law,
and no process of reasoning can make it so. In any event,
the fact remains that the association, the defendant in
this case, has provided rules and regulations, which, if
complied with, would fully protect it in every case, even
though such protection might not be necessary in a par-
ticular case. The majority of this court, by saying that
the rules and regulations, though only partially complied
with, have been substantially performed, have taken away

and deprived the association of that protection. And while the rule of substantial performance is intended to be applied to promote justice, the application thereof in the case at bar clearly leads to injustice, and will compel associations like the defendant in this case, in order to find the protection to which they are justly entitled, to make their contracts and their regulations so rigid and drastic as to lead to many unjust results. It may be unfortunate that the decisions of the various courts of the land are not in harmony; but the defendant and associations like it, have the right to guard against that very fact, and the court should not deprive them of protection by applying the doctrine of substantial performance. The cases on the subject now under consideration are very numerous. Not only is the decision of the majority on the present point opposed to the overwhelming weight of authority, but there is not, in my judgment, a single authority to sustain it. It is, fundamentally, vitally wrong, because it entirely brushes aside the rights of the defendant, and fails to give it protection, to which it is entitled, under its contract, and at our hands, so far as in us lies, in the same unstinting measure as everyone else.

ON PETITION FOR REHEARING

KIMBALL, Justice.

A petition for rehearing has been filed, supported by an extended brief and argument. All material points raised by the petition were thoroughly considered by the court before the case was decided, and, while we cannot but be impressed by the earnestness of counsel in contending that the decision was wrong, we are sure that a rehearing would be useless.

One point only need be discussed. In the trial court it was stipulated in writing that a printed copy of the constitution and by-laws of the defendant, "containing the

constitution and by-laws of the order in force at the date of the death of Garrett P. Ginther'' should be admitted in evidence without objection, and ''considered as evidence of the rules and regulations of the order and accepted as such.''

At the trial two copies of the constitution were produced and marked ''Exhibit 1'' and ''Exhibit 2.''  Exhibit 1 is the constitution in effect on and after January 1, 1920, and Exhibit 2 is that in effect on and after January 1, 1923.  The insured died in June, 1922.  The principal provision on which the defendant relied was not the same in the two exhibits.  As it reads in Exhibit 1, it is quoted as Section 10a, in our former opinion.  248 Pac. at page 853.  The similar section in Exhibit 2 has the added words, ''by the member,'' so that the last sentence of the section reads:  ''Said certificate must be forwarded to the General Secretary and Treasurer by the member.'' If this section, as it appears in the constitution of 1923 were controlling it might be, as argued by counsel, that the case of Arnold v. Newcomb, 104 O. St. 578, 136 N. E. 206, relied on by the majority of the court in our former opinion, would lose much of its force as an authority.

And it is contended that we should have decided the case on the section as it appears in the constitution of 1923, because that is the constitution referred to in the stipulation and the one from which the section was read at the trial of the case in the district court.

This matter was considered before the case was decided, and all the members of the court were quite naturally of opinion that the constitution of 1920, and not that of 1923, was applicable.  We are still unanimously of that opinion.  The stipulation cannot be construed to authorize the consideration of any regulation not in force at the death of the insured.  At the trial, when both Exhibits were before the court, counsel read the pertinent section from the constitution of 1923 after assuring the trial judge that it was the same in the constitution of 1920.  This assurance

was an error, and though, no doubt, honestly made, the defendant can gain no advantage by it.

Counsel now say that, if forced to rely on the constitution of 1920, they will contend that the applicable section, as it appears in that constitution, requires that the certificate be sent to the secretary treasurer *by the member*, and, therefore, in his lifetime, because following the section there is a note reading as follows:

"Interpretation No. 118. Responsibility for change of Beneficiary is entirely with member in making request to General Secretary and Treasurer."

We deem it unnecessary to discuss the meaning or effect of this "Interpretation No. 118." It is new in the case. It is new because defendant throughout has relied on a regulation not in force until after the death of the member. That it was not in the case before is the defendant's fault. We may say, however, that after a consideration of this "Interpretation," and the arguments with reference thereto in the brief accompanying the petition for rehearing, we are of opinion that the right of the member to change the beneficiary depends, as heretofore assumed, upon the language of the benefit certificate and constitution of the order in force at the time of the death of the member, and is neither abridged nor enlarged by the "Interpretation," the meaning of which is not at all clear.

Mr. Chief Justice Blume, who is still of the opinion expressed in his dissent, concurs with the other Justices in denying a rehearing.

*Rehearing Denied.*